THE STATE EX REL. TOLEDO BLADE COMPANY *v.*
SENECA COUNTY BOARD OF COMMISSIONERS.

[Cite as *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd.
of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253.]

(No. 2007–1694—Submitted September 16, 2008—Decided December 9, 2008.)

———

PFEIFER, J.

{¶ 1} This is an original action for a writ of mandamus to compel a board of county commissioners (1) to provide access to e-mails sent and received by the commissioners from January 1, 2006, through the August 2007 records requests

and to do so in response to future requests, (2) to recover the content of requested e-mails that had been deleted by the commissioners and to make the recovered e-mails promptly available for inspection and copying, and (3) to grant attorney fees. We grant the writ to compel the board to make reasonable efforts to recover, at its expense, the requested deleted e-mails and to make them promptly available for inspection. We deny the writ to compel the board to promptly comply with future public-records requests and deny the request for attorney fees.

## The Seneca County Courthouse

{¶ 2} In 1884, the Seneca County courthouse was built. In 2002, the electorate rejected a proposed sales-tax increase that would have funded a renovation of the courthouse. After years of public debate concerning whether to renovate the courthouse or to demolish it, respondent, Seneca County Board of Commissioners, commissioned an architectural engineering firm to perform a study of the county government's space requirements to meet future needs.

## The Board's Adoption of a Plan

{¶ 3} In August 2006, Seneca County Commissioner Benjamin E. Nutter summarized the architectural engineering study in a 15–year "Space Needs Master Plan." According to the plan, the firm commissioned by the board developed five potential solutions to the county government's space-needs problems, four of which included the demolition of the courthouse. According to Nutter's summary, the board approved a variation of one of the options that included demolition of the courthouse. The information in Nutter's summary had been previously publicly discussed when the board considered the architectural engineering report, and each of the commissioners was already familiar with the contents of Nutter's summary. Nutter e-mailed his draft report to the other commissioners so that they would be prepared to vote on it at the next public meeting. Nutter received no e-mail responses from the other commissioners, and no commissioner raised the topic in any meeting until the resolution was considered by the board in an open meeting.

{¶ 4} On August 31, 2006, the board approved the plan. According to a former reporter for the Tiffin Advertiser–Tribune, there had been no public deliberations concerning the specific option selected by the board. She stated that following the meeting, one of the commissioners mentioned that they had e-mailed each other while the plan was being drafted, and the other commissioners appeared to agree with that description of the process. Nutter expressly denied that there were any comments concerning the plan sent between the commissioners by e-mail or that the commissioners talked about the plan outside of the public meetings.

{¶ 5} The board's adoption of the plan was not necessary for its potential replacement of the old courthouse. There have been a series of independent board decisions made at open meetings that involve the board's decision to demolish the courthouse.

## Records Requests and Responses

{¶ 6} On August 6, 2007, relator, the Toledo Blade Company, requested that the board permit it to review all outgoing and incoming e-mails, including "all sent messages, received messages, deleted messages, and drafts of messages" of Seneca County Commissioners David G. Sauber, Michael A. Bridinger, and Benjamin E. Nutter since January 1, 2007. On August 22, 2007, the Blade requested to review all outgoing and incoming e-mails, including "all sent messages, received messages, deleted messages, and drafts of messages" of Seneca County Commissioners Sauber, Nutter, and Joseph Schock during 2006. The board provided records responsive to the Blade's August 6 request on August 16, withholding only those records that were covered by the attorney-client and work-product privileges. On August 31 and September 4, 2007, the board provided copies of e-mails responsive to the Blade's August 22 request.

{¶ 7} According to the Blade, the board produced no e-mails from Commissioner Nutter's inbox between January 1, 2007, and July 19, 2007, and produced no e-mails from Commissioner Bridinger's inbox or sent-messages folder. The Blade claimed that Commissioner Nutter admitted to deleting e-mails he received between January 1, 2007, and July 19, 2007, and that Commissioner Bridinger admitted deleting all e-mail in his account until he recently began saving e-mail involving county business. In addition, the Blade noted that there were substantial gaps between the dates of e-mails provided by Commissioner Sauber.

{¶ 8} Under the Seneca County schedule for records retention and disposition, e-mail that has a significant administrative, fiscal, legal, or historic value must be retained, and e-mail that has no significant value can be erased. According to the board's clerk, the individual computer user makes the determination as to when the e-mail can be deleted.

{¶ 9} On September 10, 2007, after the Blade advised the board that it knew of additional e-mails responsive to its requests that had not been provided, the board found additional e-mails contained in a hidden archive on Commissioner Nutter's computer. Neither Commissioner Nutter nor the board had previously been aware of the folder. The board advised the Blade that same day that it would get the e-mails to them within 48 hours. The board provided these records to the Blade on September 17.

{¶ 10} According to its clerk, the board searched every single folder in the hard drives of the computers of every person from whom e-mails were requested,

and it provided every available document responsive to the Blade's request. More specifically, Buckeye IT Services, which assisted the board in responding to the requests for e-mails, retrieved the e-mails from "every hard drive of each person from whom emails were requested and found the path for .pst files and then retrieved each .pst file used for that user's account." According to the board's contractor, "[w]hile it may be possible to retrieve additional information from a hard drive with very expensive forensic tools, that information would be considered deleted by the user and would not be available to the user."

## Mandamus Action

{¶ 11} Instead of waiting for the board to provide the additional records, the Blade filed this action on September 10. The Blade requests a writ of mandamus to compel the board to (1) make responsive public records available to it promptly and without delay and to do so at all times for future requests, (2) take the necessary steps to recover the content of all requested records that have been deleted and report on the steps taken, and (3) make each of the recovered e-mails promptly available to the Blade for inspection and copying. The Blade also requests an award of its costs, including attorney fees. In addition, the Blade sought ancillary injunctive relief, including a temporary restraining order, to prevent the board from destroying any e-mails relating to the courthouse and implementing any decision to demolish the courthouse. After the board filed a motion to dismiss, we granted an alternative writ on the Blade's mandamus claim, but denied its request for ancillary injunctive relief. *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 115 Ohio St.3d 1418, 2007-Ohio-5231, 874 N.E.2d 536.

{¶ 12} After mediation proved unsuccessful, the case was returned to the regular docket, and oral argument was held. This cause is now before the court on the merits.

## Ancillary Injunctive Relief

{¶ 13} In the Blade's memorandum in support of its mandamus complaint, the Blade contended that ancillary injunctive relief to prevent the board from proceeding with its planned demolition of the courthouse was required to afford the Blade complete relief so that the board's purported violations of the Open Meetings Act, R.C. 121.22, could be remedied, i.e., that the demolition could be prevented. The board contends that no Open Meetings Act violation occurred. In response, the Blade argues that this is "a case under the Public Records Act [R.C. 149.43], and only under the Public Records Act."

{¶ 14} The court has previously denied the Blade's request for ancillary injunctive relief. *State ex rel. Toledo Blade Co.*, 115 Ohio St.3d 1418, 2007-Ohio-5231, 874 N.E.2d 536.

## Jurisdictional–Priority Rule

{¶ 15} Before addressing the merits of the Blade's mandamus claim, we reject the board's claim that based on the jurisdictional-priority rule, a lawsuit brought before the commencement of this case in common pleas court by six residents of the county against the board and its commissioners bars this case. In the common pleas court case, the residents filed an amended complaint seeking, among other things, a writ of mandamus to compel the board to comply with R.C. 149.43 and other statutes by adhering to a prior writ and maintaining complete minutes of board meetings.

{¶ 16} Under the jurisdictional-priority rule, " '[a]s between [state] courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of prior proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties.' " *State ex rel. Racing Guild of Ohio v. Morgan* (1985), 17 Ohio St.3d 54, 56, 17 OBR 45, 476 N.E.2d 1060, quoting *State ex rel. Phillips v. Polcar* (1977), 50 Ohio St.2d 279, 4 O.O.3d 445, 364 N.E.2d 33, syllabus. " 'In general, the jurisdictional-priority rule applies when the causes of action are the same in both cases, and if the first case does not involve the same cause of action or the same parties as the second case, the first case will not prevent the second.' " *State ex rel. Brady v. Pianka,* 106 Ohio St.3d 147, 2005-Ohio-4105, 832 N.E.2d 1202, ¶ 13, quoting *State ex rel. Shimko v. McMonagle* (2001), 92 Ohio St.3d 426, 429, 751 N.E.2d 472. The jurisdictional-priority rule is inapplicable here because the common pleas court case involves different parties and different causes of action; the Blade's mandamus claim is premised upon its August 2007 requests for public records and the alleged deletion of e-mails, whereas the common pleas court complaint does not mention any records requests or destruction of records.

## Mandamus in Public–Records Cases

{¶ 17} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees,* 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C). We construe R.C. 149.43 liberally in favor of broad access and resolve any doubt in favor of public records. *State ex rel. Carr v. Akron,* 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, ¶ 29.

{¶ 18} " 'Public record' means records kept by any public office, including * * * county * * * units." R.C. 149.43(A)(1). It is undisputed that the board of county commissioners is a public office subject to R.C. 149.43. See, e.g., *State ex rel. Cincinnati Enquirer v. Krings* (2001), 93 Ohio St.3d 654, 657, 758 N.E.2d 1135. The board also does not contend that the requested e-mails of the commissioners either are not records or are excepted from disclosure. See *State ex rel. Wilson–Simmons v. Lake Cty. Sheriff's Dept.* (1998), 82 Ohio St.3d 37, 42,

693 N.E.2d 789, fn. 1 (public-office e-mail can constitute public records under R.C. 149.011(G) and 149.43 if it documents the organization, policies, decisions, procedures, operations, or other activities of the public office); *State ex rel. Cincinnati Enquirer v. Jones–Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus ("Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception").

## Recovery of Deleted Records

{¶ 19} The primary issue raised in this case is whether the Blade is entitled to a writ of mandamus to compel the board to recover the content of the requested e-mails that have been unlawfully deleted and make them promptly available for inspection. In its first proposition of law, the Blade contends that "[w]hen a public office unlawfully destroys public records but the contents of the records can be recovered or restored, the public office's obligation to maintain the records includes an obligation, enforceable in mandamus, to take the necessary steps to restore the records and to make them available for inspection and copying upon request under the Public Records Act."

{¶ 20} "Public records are one portal through which the people observe their government, ensuring its accountability, integrity, and equity while minimizing sovereign mischief and malfeasance." *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 16. The General Assembly has enacted statutes, including those in R.C. Chapter 149, to "reinforce the understanding that open access to government papers is an integral entitlement of the people, to be preserved with vigilance and vigor." Id. at ¶ 17. "In recognition that the right of access is a hollow one if records are not preserved for review, R.C. 149.351 proscribes the destruction, mutilation, removal, transfer, or disposal of or damage to public records and imposes penalties for violation of the law * * *." Id. at ¶ 18.

{¶ 21} Under the version of R.C. 149.43(B)(1) in effect at the time that some of the requested e-mails were deleted, the board as a public office had an additional duty to "maintain public records in a manner that they can be made available for inspection." 2006 Sub.H.B. No. 141. That duty still exists under the current version of the statute. See R.C. 149.43(B)(2) ("To facilitate broader access to public records, a public office or the person responsible for public records shall organize and maintain public records in a manner that they can be made available for inspection or copying * * * "). Public offices are also authorized to dispose of records pursuant to a duly adopted policy for records retention and disposal without violating R.C. Chapter 149. See, e.g., R.C. 149.351 and 149.38.

{¶ 22} At issue here, however, is a public office's obligations under R.C. 149.43 if e-mails that constitute public records are deleted in violation of a records-retention policy. We did not address this issue in *Wilson–Simmons,* 82 Ohio St.3d at 42, 693 N.E.2d 789, where we observed that "[t]here is no evidence or assertion that the [public office] violated any applicable records retention provision by writing over the records in the routine operation of its computer system." This case thus presents a novel public-records claim.

{¶ 23} In framing this issue, we emphasize that in cases in which public records, including e-mails, are properly disposed of in accordance with a duly adopted records-retention policy, there is no entitlement to those records under the Public Records Act. Neither party to this case suggests otherwise, although they argue about whether the board did, in fact, properly dispose of the requested e-mails. With that caveat in mind, we now address the merits of the Blade's claim.

{¶ 24} Since at least 2005, "it can fairly be assumed that nearly every legal entity subject to the jurisdiction of the state and federal courts generates and maintains at least some of its information in an electronic form." Annotation, Electronic Spoliation of Evidence (2005), 3 A.L.R.6th 13, 23, Section 2. "Electronic mail, or 'e-mail,' is an especially efficient means of business communication." 41 American Jurisprudence Proof of Facts 3d (2008) 7, Recovery and Reconstruction of Electronic Mail as Evidence, Section 1. "Contrary to popular belief, however, computer data is not safe from disclosure merely because it has been 'deleted' from a system or is contained in a damaged disk or hard drive. Using sophisticated computer programs, electronic mail messages or computer files thought to be deleted can be retrieved from the deep recesses of a computer data base long after they have disappeared from the screen." Annotation, Discovery of Deleted E-mail and Other Deleted Electronic Records (2007), 27 A.L.R.6th 565, 576, Section 2.

{¶ 25} "[I]t is a well accepted proposition that deleted computer files, whether they be e-mails or otherwise, are discoverable." See *Antioch Co. v. Scrapbook Borders, Inc.* (D.Minn. 2002), 210 F.R.D. 645, 652, and cases cited therein; see also 2008 Staff Note, Civ.R. 34 ("The amendment to Civ.R. 34(A) clarifies that discovery of electronically stored information is expressly authorized and regulated by this rule"). In various circumstances, courts have thus ordered that parties must retrieve electronic data when it is likely to provide information relevant to the case. See, generally, 27 A.L.R.6th 565; see also Haig, 2 Business and Commercial Litigation in Federal Courts (2d Ed. 2007), Section 21:33 ("Electronic data that has been deleted is often retrievable through back-up systems, and courts have held that material deleted from computers but stored on back-up systems must be produced").

{¶ 26} In the context of a public-records claim under R.C. 149.43, it is manifest that a public office violates R.C. 149.43(B) by deleting e-mails that it has a statutory obligation to maintain. The requested e-mails here are not merely relevant to the Blade's public-records mandamus claim—they are the object of the claim. We must determine the appropriate factors for determining when a public office has a duty under R.C. 149.43(B) to recover the content of deleted e-mails and to provide access to them.

{¶ 27} First, it must be determined whether deleted e-mails have been destroyed. There is no duty under R.C. 149.43 to create records that no longer exist. See *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 15 (in public-records mandamus case, respondents "have no duty to create or provide access to nonexistent records"). Therefore, if the requested e-mails no longer exist, they cannot be obtained by mandamus. *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network, Inc. v. Cincinnati Bd. of Edn.*, 99 Ohio St.3d 6, 2003-Ohio-2260, 788 N.E.2d 629, ¶ 15 (relator is "not entitled to a writ of mandamus to compel what would be tantamount to an impossible act").

{¶ 28} As noted previously, the mere deletion of some of the e-mails by the commissioners did not necessarily destroy them. 27 A.L.R.6th at 576, Section 2. The Blade's evidence establishes that "[d]eleted e-mail, as well as other data and files, is frequently recoverable by scanning a hard [d]rive" even though the e-mail has been deleted, because the data remains on the hard drive until the space where the data exist is overwritten by new data. The board did not introduce evidence that rebutted the evidence that the deleted e-mails still exist on the computers. As long as these e-mails are on the hard drives of the commissioners' computers, they do not lose their status as public records. *State ex rel. Dispatch Printing Co. v. Columbus* (2000), 90 Ohio St.3d 39, 41, 734 N.E.2d 797 ("so long as a public record is kept by a government agency, it can never lose its status as a public record").

{¶ 29} Second, to be entitled to the recovery of deleted e-mails, the Blade must make a prima facie showing that the e-mails were deleted in violation of the county's records-retention-and-disposition policy. Cf., e.g., *O'Brien v. Olmsted Falls*, Cuyahoga App. Nos. 89966 and 90336, 2008-Ohio-2658, 2008 WL 2252527, ¶ 17 (burden of proof on the plaintiff to establish elements to recover for spoliation of evidence); *Kish*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 9 (plaintiffs in federal lawsuit established that public employer violated R.C. 149.351 by destroying certain records). "[I]n the absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a

lawful manner." *State ex rel. Shafer v. Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590, 50 O.O. 465, 113 N.E.2d 14; *Toledo v. Levin,* 117 Ohio St.3d 373, 2008-Ohio-1119, 884 N.E.2d 31, ¶ 28.

{¶ 30} The evidence introduced here establishes that there are substantial gaps in the responsive e-mails provided by the board of commissioners, e.g., no e-mails were provided from Commissioner Nutter's inbox between January 1, 2007, and July 19, 2007, no incoming or outgoing e-mails were provided from Commissioner Bridinger's public account from the beginning of his term in January 2007 until September 2007, gaps existed between the dates of e-mails produced for Commissioner Sauber from 2006, and no e-mails were provided from former Commissioner Schock for all of 2006. Commissioner Bridinger admitted that he only recently began saving e-mails involving county business. These facts raise the reasonable inference that the e-mails were deleted in violation of the county's records-retention-and-disposition schedule; it defies logic that all public-office e-mail during these lengthy periods lacked significant administrative, fiscal, legal, or historic value.

{¶ 31} The board does not claim that e-mails relating to the issue of the county courthouse would lack a significant legal or historic value. Instead, the board asserts that there is no evidence that any of the deleted e-mails violated the county's records-retention-and-disposition schedule. The board claims that under this schedule, it is up to the individual computer user—here, each individual commissioner—to make the determination. The board ignores the Blade's evidence of substantial gaps in the dates of the e-mails provided; those gaps raise the inference that some e-mails were deleted in violation of the schedule. So too does the Blade's evidence that Commissioner Bridinger admitted that he had only recently begun keeping work-related e-mails. Further, a construction of R.C. 149.35 and 149.38, in conjunction with R.C. 149.43, that vests individual government employees with unreviewable authority to delete work-related e-mails is unreasonable because it would authorize the unfettered destruction of public records. See R.C. 1.47(C); *State ex rel. Todd v. Felger,* 116 Ohio St.3d 207, 2007-Ohio-6053, 877 N.E.2d 673, ¶ 10 (court has duty to construe statutes to avoid unreasonable or absurd results).

{¶ 32} The board failed to rebut the inference raised by the Blade's evidence that the commissioners deleted e-mails that have a significant administrative, fiscal, legal, or historic value. The board did not submit an affidavit of any of the commissioners specifying that the e-mails that they deleted lacked significant administrative, fiscal, legal, or historic value. In fact, the one commissioner's affidavit submitted as evidence by the board concedes that the Seneca County Courthouse has been "the topic of public interest for a long time."

{¶ 33} The board also asserts that the Blade's mandamus claim fails because "no evidence exists that the Blade has been denied identical copies of emails that have allegedly been deleted." But there is also no evidence to the contrary, and the board should bear the burden of proof on this point because the matter is within its—and not the Blade's—knowledge. See, e.g., *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 8–9 (respondents in public-records mandamus case failed to prove that they had provided the requested record); *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 83, 526 N.E.2d 786 (appropriate to place burden of proving an exception to the Public Records Act on a government custodian because the custodian had knowledge of contents of record).

{¶ 34} Therefore, the Blade has sufficiently established that the board may have deleted e-mails in violation of the county's records-retention-and-disposition schedule.

{¶ 35} Third, there must be some evidence that recovery of the deleted e-mails may be successful. In its reply brief, the Blade asserted that "the uncontradicted evidence before the Court is that it is more likely than not that at least some of the deleted messages can be retrieved through forensic-recovery techniques." The Blade submitted an affidavit of a computer expert specializing in forensic data-recovery services who stated that "[d]eleted e-mail, as well as other data and files, is frequently recoverable by scanning a hard [d]rive with the appropriate forensic data recovery software and hardware." Although the Blade's expert also stated that "[i]t is not possible to know whether deleted email messages or other data is recoverable until forensic recovery and analysis is attempted," the Blade has introduced sufficient evidence that recovery of the deleted e-mails may be successful. This is all that is required here, when the evidence raises an inference that the commissioners deleted e-mails in contravention of the applicable records-retention-and-disposition schedule. See, e.g., *Williams v. Williams* (Sept. 24, 1992), Franklin App. No. 92AP–438, 1992 WL 246020, *2 (citing "the fundamental and equitable principle that wrongdoers ought not benefit from their own wrongdoing"); see also *Sikora v. Sikora* (1972), 160 Mont. 27, 31, 499 P.2d 808 (recognizing the "equitable principle that a wrongdoer may not benefit from his wrongful acts").

{¶ 36} Fourth, the mere fact that the cost of the recovery services may be expensive does not bar the court from ordering that recovery be attempted. "No pleading of too much expense, or too much time involved, or too much interference with normal duties, can be used by the respondent to evade the public's right to inspect and obtain a copy of the public records within a reasonable time." *State ex rel. Beacon Journal Publishing Co. v. Andrews* (1976), 48 Ohio St.2d

283, 289, 2 O.O.3d 434, 358 N.E.2d 565. In fact, although the board refers to the potential expenditure of "tens of thousands of dollars," it has not introduced evidence to support this sum. Moreover, insofar as the e-mails still exist on the commissioners' computers, they remain public records, and the board has a duty to organize and maintain them in a manner in which they can be made available for inspection and copying. R.C. 149.43(B)(2); *Dispatch Printing,* 90 Ohio St.3d at 41, 734 N.E.2d 797 (as long as a public record is kept by government agency, it does not lose its status as public record).

{¶ 37} Finally, there is an issue concerning who should bear the expense of the forensic analysis of the commissioners' computers to recover the deleted e-mails. The board claims that the cost of the forensic analysis should be paid for by the Blade as required by R.C. 149.43(B)(1), which provides that all public records responsive to the request "shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours * * * at cost and within a reasonable period of time." The board's claim lacks merit because the Blade's requests were to review, i.e., inspect, the e-mails, not to have copies of the e-mails. "The right of inspection, as opposed to the right to request copies, is not conditioned on the payment of any fee under R.C. 149.43." *State ex rel. Warren Newspapers, Inc. v. Hutson* (1994), 70 Ohio St.3d 619, 624, 640 N.E.2d 174. The board's reliance on our holding in *State ex rel. Margolius v. Cleveland* (1992), 62 Ohio St.3d 456, 460, 584 N.E.2d 665, that "a governmental agency must allow the copying of the portions of computer tapes to which the public is entitled pursuant to R.C. 149.43, if the person requesting the information has presented a legitimate reason why a paper copy of the records would be insufficient or impracticable, and if such person assumes the expense of copying," is thus misplaced because the Blade seeks only to inspect the records. In addition, *Margolius* did not involve e-mails that had been deleted in contravention of an adopted records-retention-and-disposition policy.

{¶ 38} The general rule in discovery disputes concerning deleted e-mails is that "because the cost of retrieving deleted electronic data can be high, the costs of such retrieval may be shifted to the party seeking discovery [in] some circumstances." Annotation, 27 A.L.R.6th at 577, Section 3; see also 8 Wright, Miller, and Marcus, Federal Practice and Procedure (Supp.2008) 64, Section 2008.2, construing Fed.R.Civ.P. 26(b)(2)(B) ("When the court orders discovery from sources that have been shown to be not reasonably accessible, * * * the court may require the party seeking discovery to shoulder part or all of the reasonable costs of obtaining the information from inaccessible sources"); Civ.R. 26(B)(4) (effective July 1, 2008) ("In ordering production of electronically stored information, the court may specify the format, extent, timing, allocation of expenses and other conditions for the discovery of the electronically stored information").

{¶ 39} In exercising our discretion here, we recognize that several factors support placing the expense of the forensic recovery of the commissioners' deleted e-mails on the board: (1) under R.C. 149.43, requesters of public records need not pay a fee to inspect public records, (2) the board failed to maintain the requested e-mails in accordance with the applicable schedule for records retention and disposition, (3) R.C. 149.43 must be construed liberally in favor of disclosure of public records, (4) no pleading of too much expense justifies noncompliance with R.C. 149.43, and (5) the entitlement of a member of the public to public records under R.C. 149.43 is stronger than the right of a litigant to discovery under Civ.R. 26 because the very object of the public-records mandamus suit is to obtain the records. Placing the expense of the recovery on the Blade is arguably supported by the following factors: (1) the forensic-recovery process may be expensive and (2) the recovered e-mails may be minimal. On balance, the factors that support having the board bear the expense of the forensic analysis to recover the deleted e-mails outweigh the speculative factors that support having the Blade absorb the cost.

{¶ 40} Nevertheless, we also hold that the board's recovery efforts need only be reasonable, not Herculean, consistent with a public office's general duties under the Public Records Act. See, e.g., *State ex rel. Consumer News Servs., Inc. v. Worthington City Bd. of Edn.*, 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 37 (respondents in public-records mandamus case had a duty to provide copies or requested records within a reasonable period of time).

{¶ 41} Therefore, we grant a writ of mandamus to compel the board to recover the requested deleted e-mails and to make reasonable efforts to make the recovered e-mails promptly available for inspection. The board will bear the expense of the recovery efforts, and we specify that the board must inform the relator of the results of these efforts within two months after the date of the judgment.

### Mandamus to Compel the Board to Provide Access to Public Records in the Future without Delay

{¶ 42} The Blade next contends that it is entitled to a writ of mandamus to compel future compliance by the board to make public records promptly available for inspection. The Blade contends that it is entitled to the writ because the board withheld more than 700 pages of e-mails until after this mandamus action was filed, and the board's failure was "part of a pattern of non-responsiveness to public-records requests." For the following reasons, we deny the writ.

{¶ 43} First, the Blade's mandamus claim for these e-mails was rendered moot once the board provided the subject records. See *State ex rel. Toledo Blade Co. v. Ohio Bur. of Workers' Comp.*, 106 Ohio St.3d 113, 2005-Ohio-6549, 832 N.E.2d

711, ¶ 16 (in general, providing the requested records to the relator in a public-records mandamus case renders the mandamus claim moot).

{¶ 44} Second, in general, a " 'writ of mandamus will not issue to compel the general observance of laws in the future.' " *State ex rel. Leslie v. Ohio Hous. Fin. Agency,* 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 49, quoting *State ex rel. Kirk v. Burcham* (1998), 82 Ohio St.3d 407, 409, 696 N.E.2d 582; see also *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.,* 108 Ohio St.3d 432, 2006-Ohio-1327, 844 N.E.2d 335, ¶ 38.

{¶ 45} Third, the issue of the board's diligence in complying with the request for e-mails that it did not know had been inadvertently archived on Commissioner Nutter's computer was moot because there is no historical lack of diligence on the part of the board in complying with public-records requests, including those submitted by the Blade. During the same general period that the Blade submitted the two requests that are the subject of this mandamus action, it submitted eight other requests that the board promptly complied with, which suggests that the failure to provide e-mails that were contained in a hidden archive on Commissioner Nutter's computer was an inadvertent mistake that would not likely be repeated. The Blade has not established that the board's inadvertent, isolated mistake is capable of repetition. In fact, once the possibility that the archived e-mails might exist was brought to the attention of the board, it immediately located the e-mails and contacted the Blade to advise it that the e-mails would be provided as soon as possible.

{¶ 46} Finally, the cases that the Blade cites, including *Consumer News Servs.,* 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 32 ("given the respondents' historical lack of diligence in complying with public records requests * * *, the issue of the timeliness of respondents' provision of public records is not moot because it is capable of repetition yet evading review"), are distinguishable and do not support the Blade's claim because the Blade has proven no comparable pattern of nonresponsiveness.

{¶ 47} Therefore, we deny the Blade's claim for a writ of mandamus to compel the board, in the future, to promptly make public records available for inspection upon request.

### Attorney Fees

{¶ 48} The Blade also requests an award of attorney fees. Effective September 29, 2007, R.C. 149.43 was amended, and subsection (C) now provides new standards for awarding attorney fees in public-records mandamus cases. 2006 Sub.H.B. No. 9. Because that amendment does not include language that makes it applicable to records requests and cases filed before that effective date, we apply

the law that existed before that date in this case, which was filed before September 29, 2007. *State ex rel. Cincinnati Enquirer v. Jones–Kelley,* 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 47, fn. 1.

{¶ 49} An award under the applicable version of R.C. 149.43 is not mandatory. *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 443, paragraph two of the syllabus. "In granting or denying attorney fees under R.C. 149.43(C), courts consider the reasonableness of the government's failure to comply with the public records request and the degree to which the public will benefit from release of the records in question." *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 54, 689 N.E.2d 25.

{¶ 50} On the novel issue of the recovery of deleted e-mails, the board's argument was not unreasonable. See *State ex rel. Cincinnati Enquirer v. Jones–Kelley,* 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 48 (in denying a request for attorney fees, emphasizing that the court had not previously considered claimed exceptions to the disclosure of certain information about certified foster caregivers). "[C]ourts should not be in the practice of punishing parties for taking a rational stance on an unsettled legal issue." *State ex rel. Olander v. French* (1997), 79 Ohio St.3d 176, 179, 680 N.E.2d 962. Moreover, the Blade's remaining mandamus claim requesting the board's future compliance with public-records requests lacks merit. *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register,* 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 43 (relator is not entitled to an award of attorney fees on public-records mandamus claims that lack merit). Therefore, we deny the Blade's request for attorney fees.

## Conclusion

{¶ 51} Based on the foregoing, we grant a writ of mandamus to compel the board to make reasonable efforts to recover, at its expense, the requested deleted e-mails and to make them promptly available for inspection. The board should inform the relator of the results of its efforts within two months from the date of the court's judgment. Insofar as the board asserts that such a holding would "severely" compromise a public office's ability to use e-mail by forcing the public office to "expend countless hours of time and endless finances to respond" to public-records requests, there is no evidence to support these contentions. If anything, our holding ensures that public officials will be more cognizant of their duties under the applicable records-retention-and-disposition policies and will be less likely to delete work-related public-office e-mails in violation of those policies. Otherwise, without proper preservation of public records, "the right of access to government records is a hollow one." *Kish,* 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 18. Moreover, "the General Assembly [and not this court] is

the ultimate arbiter of policy considerations relevant to public-records laws." Id. at ¶ 44.

{¶ 52} In addition, we deny the Blade's request for a writ of mandamus to compel the board to promptly comply with future requests for public records, and we deny the Blade's request for attorney fees.

Judgment accordingly.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., concurs in judgment only.

———

Fritz Byers, for relator.

Isaac, Brant, Ledman & Teetor, L.L.P., Mark Landes, Mark H. Troutman, and Mark R. Weaver, for respondent.