THE STATE EX REL. MORGAN *v.* STRICKLAND, GOVERNOR.

[Cite as *State ex rel. Morgan v. Strickland,*

121 Ohio St.3d 600, 2009-Ohio-1901.]

(No. 2009-0614 ─ Submitted April 21, 2009 ─ Decided April 24, 2009.)

*Mandamus – Public records – R.C. 149.43 – Governor – Request for public records – Governor acted reasonably in responding to request given request's broad scope and necessity for review before release – Limited writ issued to compel governor to continue reviewing remaining records and to provide copies within reasonable time.*

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} This is an original action for a writ of mandamus to compel respondent, Governor Ted Strickland, to provide copies of certain records related to the governor's education-funding plan. Because the requested records serve to "document the * * * functions, policies, decisions, procedures, operations, or other activities of the office" of the governor, see R.C. 149.011(G), particularly as they relate to his school-funding plan, we grant a limited writ of mandamus to compel the governor to continue reviewing the potentially responsive records and to provide copies of them to relator within a reasonable time.

**H.B. 1**

{¶ 2} Am.Sub.H.B. No. 1 ("H.B. 1") is the governor's proposed operating budget for fiscal years 2010 and 2011. H.B. 1 was introduced as proposed legislation on February 12, 2009. H.B. 1 would replace the current school-funding method with a new method, which would adopt an evidence-based model that calculates an "adequacy amount" for each school district.

**Records Requests**

**{¶ 3}** Relator, Seth A. Morgan, is a resident of Montgomery County, Ohio, and is a member of the Ohio House of Representatives for the 36th District. On March 12, Morgan requested certain records from the governor's office concerning the proposed school-funding plan, including any and all documents and correspondence relating to the evidence-based model and e-mail communications that refer to the evidence-based model or education funding in general. Morgan admitted that his request was "comprehensive," but offered to assist in helping the governor's office "narrow the specific documents" he was requesting. After receiving no response to his March 12 request, Morgan made another request on March 25 reiterating his previous request.

**{¶ 4}** The governor's office followed its general procedure in responding to Morgan's "non-routine" requests for voluminous records, except for failing to provide written acknowledgement of the request as defined in the governor's public-records policy. The record officer received the request on March 17 and proceeded to determine the scope and possible location of potentially responsive records. The record officer then ordered a search of all of the office's e-mail accounts relating to the evidence-based model and education funding. The initial search returned over 8,700 e-mail messages comprising over 74,000 pages of data.

**Mandamus Case**

**{¶ 5}** After receiving no response to his requests and while the governor's office was proceeding with its preliminary search and review of potentially responsive records, Morgan filed this action on April 6. Morgan seeks a writ of mandamus to compel Governor Strickland to make available the records he requested in accordance with the Public Records Act and to provide a written explanation that includes legal authority for any records not provided. Morgan also requests statutory damages and attorney fees. On April 8, we granted

Morgan's motion for expedited consideration, granted an alternative writ, and ordered an accelerated schedule for the submission of evidence and briefs.

{¶ 6} On April 7, the governor's office responded to the requests with a detailed letter and provided some of the requested records. Although the governor objected to many of Morgan's requests as overbroad, he nevertheless indicated that he was endeavoring to satisfy the requests by searching for, compiling, and reviewing potentially responsive records to redact information protected by state and federal law before providing copies. The governor noted that he was not invoking executive privilege to withhold the records.

{¶ 7} Morgan responded with a letter dated April 8 in which he demanded that the governor's office immediately provide him with the over 8,700 potentially responsive e-mails referred to in the governor's office's April 7 letter. By letter the next day, the governor's office provided over 6,100 pages of additional records, but rejected Morgan's request for immediate access to the requested e-mails because they had not yet been reviewed for exempt material. The governor's office also noted that it had not yet claimed attorney-client privilege or any other available privilege or exemption to prevent the release of the records provided to relator.

{¶ 8} This cause is now before the court for its consideration of the merits. As a preliminary matter, any alleged noncompliance with R.C. 109.02 does not prevent us from resolving Morgan's mandamus claim. In fact, the governor does not specifically argue that it does. Instead, he merely claims that the asserted violation of R.C. 109.02 prevents Morgan's request for attorney fees.

**Mandamus**

{¶ 9} The Public Records Act reflects the state's policy that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. The purpose of the act is "to expose government activity to public scrutiny, which is

absolutely essential to the proper working of a democracy." *State ex rel. WHIO-TV-7 v. Lowe* (1997), 77 Ohio St.3d 350, 355, 673 N.E.2d 1360. In accordance with this salutary purpose, "[w]e construe R.C. 149.43 liberally in favor of broad access and resolve any doubt in favor of public records." *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 17.

{¶ 10} At issue here is whether the governor has provided copies of the requested records within a reasonable time. R.C. 149.43(B)(1) provides that "upon request, a public office or person responsible for public records shall make copies of the requested public record available at cost within a reasonable period of time." The determination of whether the governor complied with his statutory duty to timely provide copies of the requested records depends upon all of the pertinent facts and circumstances. See *State ex rel. Consumer News Servs., Inc. v. Worthington City Bd. of Edn.*, 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 37-38.

{¶ 11} Under R.C. 149.43(E)(1), "all public offices shall adopt a public records policy in compliance with [the Ohio Public Records Act] for responding to public records requests." The governor has done so and recognizes the importance of the act in his office's official "Public Records Policy and Procedures."

{¶ 12} Among other things, the official public-records policy of the governor's office provides that responses to public-records requests "will be completed in a reasonable time taking into account the scope of the request, the ease or difficulty of identifying, compiling and reviewing potentially responsive records, and the operational needs of the Governor's Office." For "non-routine" requests, like the ones here, seeking a large number of copies or requiring an extensive search or review, the policy provides that the governor's office shall provide a written acknowledgement of its receipt of the request, which includes

an estimate of the time it will take to satisfy the request, an estimated cost, and identification of items that may be exempt from disclosure or subject to redaction. Under the policy, all records requests are referred promptly to the governor's record officer, the responsive records are reviewed to prevent the disclosure of certain exempt information, and the governor's office decides whether to invoke or waive privileges and exemptions. The governor did not comply with the requirement of the policy that he provide the person requesting records with an estimate of the time it will take to satisfy the request, an estimated cost, and identification of items that may be exempt or redacted.

{¶ 13} We find that thus far, with the exception of that portion of the policy specified, the governor has acted reasonably and within the parameters of R.C. 149.43 as well as his duly adopted public-records policy. As of the completion of briefing, he had chosen not to invoke either executive privilege or attorney-client privilege to withhold any of the requested records.

{¶ 14} Moreover, Representative Morgan's requests were arguably overbroad in part. " '[I]t is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue.' " *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 29, quoting *State ex rel. Fant v. Tober* (Apr. 28, 1993), Cuyahoga App. No. 63737, 1993 WL 173743, *1. "Requests for information and requests that require the records custodian to create a new record by searching for selected information are improper requests under R.C. 149.43." *Morgan* at ¶ 30.

{¶ 15} Morgan's initial request included "[a]ny and all e-mail communications * * * which reference in a substantive manner the 'evidence-based model' or education funding in general." In that request, Morgan attempted to clarify that he wanted only those e-mails in which the evidence-based model was "the primary topic or significant part of the communications." Later, in his April 8 reply to the governor's office's detailed April 7 response to his public-

records requests, Morgan appeared to request the immediate production of copies of all e-mails that contained references to the school-funding model regardless of whether the reference was "substantive" or was the "primary topic" or a "significant" part of the e-mails. Morgan should therefore work to refine, narrow, and further clarify his requests.

{¶ 16} Furthermore, "R.C. 149.43(A) envisions an opportunity on the part of the public office to examine records prior to inspection in order to make appropriate redactions of exempt materials." *State ex rel. Warren Newspapers, Inc. v. Hutson* (1994), 70 Ohio St.3d 619, 623, 640 N.E.2d 174.

{¶ 17} Given the broad scope of the records requested, the governor's office's decision to review the records before producing them, to determine whether to redact exempt matter, was not unreasonable.

{¶ 18} In addition, R.C. 149.43 contemplates that the requester and the public-records custodian cooperate in fulfilling a request. See *State ex rel. Strothers v. Murphy* (1999), 132 Ohio App.3d 645, 651, 725 N.E.2d 1185 (court urged parties to cooperate to satisfy a public-records request). For example, R.C. 149.43(B)(2) provides, "If a requester makes an ambiguous or overly broad request or has difficulty in making a request for copies or inspection of public records under this section such that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested, the public office or the person responsible for the requested public record may deny the request but shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or the person's duties."

{¶ 19} We have also recognized that "a reasonably exercised spirit of mutual cooperation among the various branches of government is essential." *State ex rel. Johnston v. Taulbee* (1981), 66 Ohio St.2d 417, 420, 20 O.O.3d 361,

423 N.E.2d 80. We anticipate the continued cooperation between the governor's office and the relator concerning the requested records pertinent to the governor's school-funding plan in H.B. 1.

{¶ 20} Therefore, because the requested records serve to "document the * * * functions, policies, decisions, procedures, operations, or other activities of the office" of the governor, see R.C. 149.011(G), particularly as it relates to his school-funding plan, we grant a limited writ of mandamus to compel the governor to continue reviewing the remaining responsive records and, after making appropriate redactions, to provide copies to Representative Morgan within a reasonable time. The parties are encouraged to cooperate to achieve a mutually acceptable resolution of the pending records requests. The request for attorney fees and statutory damages is denied at this time.

### Conclusion

{¶ 21} The requested records relating to the governor's school-funding plan are unquestionably important. Their timely disclosure after the governor's opportunity to review them to redact exempt material is consistent with the precept that "[i]n order to ensure that government performs effectively and properly, it is essential that the public be informed and therefore able to scrutinize the government's work and decisions." *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 15. The ultimate disclosure of the requested records here helps "illuminate and foster understanding of the rationale" underlying the governor's school-funding plan and will better inform both the public and the General Assembly about the plan. Id. at ¶ 16.

{¶ 22} For these reasons, we grant a limited writ of mandamus to compel Governor Strickland to continue reviewing the remaining responsive records and to provide copies of them to Representative Morgan within a reasonable time.

Judgment accordingly.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs separately.

_____

**PFEIFER, J., concurring.**

{¶ 23} I have no objection to the substance of the "limited writ" granted by this court today. There isn't any substance to object to. But I am less than certain that the writ provides any meaningful guidance to the parties in the event that there are unresolved differences.

{¶ 24} What we have here is failure to communicate. And this court, despite proven resources at our disposal, does nothing to resolve that problem. This dispute cries out for mediation. For despite some heated rhetoric, there does not seem to be much disagreement between the parties as to the law. Rather than issuing a writ of any kind, this court should have taken the more prudent course of following a procedure that we frequently employ in public-records cases, and that is to encourage mediation upon the filing of the pleadings.

{¶ 25} At this point, we should *order* mediation. All sides here know what the law is; this court's professional mediation staff could manage and monitor the production of documents. Mediation could facilitate a narrowing of the documents requested – some of what Representative Morgan has demanded may become moot or meaningless due to the fact that, not surprisingly, the majority leaders of the House of Representatives have significantly changed the governor's proposed legislation. Further alterations will continue throughout the legislative process. Mediation could keep a bevy of lawyers from wasting their efforts and also save a good number of trees.

{¶ 26} We should take this public-records request seriously, and employ our best methods to encourage diligent communication between the parties in order to bring about a resolution that is consistent with Ohio's strong

tradition of open records.  We have squandered an opportunity to ensure that this matter does not devolve into political theater.

{¶ 27}  The parties themselves are still able to seek mediation through this court.  This court's skilled mediation staff is experienced in public-records mediation and remains an available and valuable resource.

_____

KBH Law Office and Kari B. Hertel, for relator.

Richard Cordray, Attorney General, and Aaron D. Epstein, Pearl M. Chin, and Daniel C. Roth, Assistant Attorneys General, for respondent.

_____