The STATE ex rel. ANDWAN, Appellant/Cross–Appellee,

v.

VILLAGE OF GREENHILLS et al., Appellees/Cross–Appellants.

[Cite as *State ex rel. Andwan v. Greenhills*, 191 Ohio App.3d 209, 2010-Ohio-5962.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–100011 and C–100051.

Decided Dec. 8, 2010.

---

210

Curt C. Hartman, for appellant and cross-appellee.

Mazanec, Raskin, Ryder & Keller Co., L.P.A., John T. McLandrich, Todd M. Raskin, and Frank H. Scialdone, for appellees and cross-appellants.

Per Curiam.

{¶ 1} In these consolidated appeals, the village of Greenhills, Ohio, and its mayor, clerk, and municipal manager (collectively, "the village") appeal the trial court's entry of summary judgment in favor of relator-appellant and cross-appellee, Patricia A. Andwan, on her claim that the village had violated its duties under Ohio's Public Records Act to provide requested records in a reasonable period of time. Andwan also appeals the trial court's failure to award attorney fees and statutory damages for the village's violation. Because the village complied with its statutory duty to timely provide copies of the requested records, we reverse in part.

## I. Andwan's Request for Village Records

{¶ 2} On September 1, 2009, Andwan, a village resident, hand-delivered two letters to the village. Pursuant to the Public Records Act, R.C. 149.43, she requested copies of an extensive list of public records. Andwan requested the following: (1) copies of all official minutes of the village's Planning Commission from January 1, 1995, to the present, (2) copies of all official minutes of the village's Board of Zoning Appeals from January 1, 1995, to the present, (3) copies of all resolutions or recommendations of the village's Planning Commission from January 1, 1995, to the present that were not attached to the requested minutes, (4) copies of all resolutions or recommendations of the village's Board of Zoning Appeals from January 1, 1995, to the present that were not attached to the requested minutes, (5) copies of all executed contracts entered into by the village pursuant to ordinance No. 2009–19–CD, (6) copies of all quotations, RFPs [requests for proposals], or RFQs [requests for quotations] for any contract or potential contract pursuant to ordinance No. 2009–19–CD, (7) copies of all records of any payment, purchase order, or invoice related to any work performed or proposed to be performed on all properties owned by the village and located at

the site known as DeWitt Court from July 2003 to the present, (8) copies of all records from September 1, 2008, to the present reflecting any payment received by the village from any insurance company or carrier relating to any claim for damage to any property owned by the village, and (9) copies of all correspondence or other communications to any individual in possession of or renting property owned by the village and located on DeWitt Court indicating or declaring the termination of any lease or the need for such individuals to vacate the property. Andwan acknowledged the voluminous nature of her request when she also informed the village that she was "willing to pay the reasonable costs of copying at 5 cents per page," but requested that the village notify her if the total costs involved would exceed $30, the cost of copying 600 pages of village documents.

{¶ 3} The village had only three full-time administrative personnel: Jane A. Berry, the municipal manager, a finance director, and an assistant to the municipal manager and the village property manager. Berry was the employee assigned to respond to public-records requests in addition to her regularly assigned duties as municipal manager. The records Andwan had requested were kept in various storage facilities and rooms within the Village Hall, including the village archives located in its basement. Some records had to be retrieved from the filing and records systems of other village departments and offices. After retrieving the requested records, Berry had to review the records to determine what, if any, information had to be redacted from the documents and then to copy the records.

## II.  The Writ of Mandamus

{¶ 4} On September 14, 2009, nine business days after delivering her public-records request, and having received no response from the village, Andwan filed a verified complaint for a writ of mandamus seeking release of the records.[1] Mandamus is the appropriate remedy to compel compliance with a public-records request.[2] Andwan asserted that the village had failed to respond to her records request within a reasonable time as required by R.C. 149.43(B)(1) and that it had violated its own public-records policy, which provided that "[a]ll requests for public records must either be satisfied * * * or be acknowledged in writing by the Village within three business days following the office's receipt of the request."[3] Andwan also sought an award of statutory damages, under R.C. 149.43(C)(1), and attorney fees, under R.C. 149.43(C)(2)(b).

---

1. See R.C. 149.43(C)(1).

2. See *State ex rel. Cincinnati Enquirer v. Krings* (2001), 93 Ohio St.3d 654, 657, 758 N.E.2d 1135; see also *State ex rel. Seikbert v. Wilkinson* (1994), 69 Ohio St.3d 489, 490, 633 N.E.2d 1128.

3. Village of Greenhills Ordinance No. 111.03(d)(2); see also R.C. 149.43(B)(7).

{¶ 5} On September 22, six business days later, and just 15 business days after receiving Andwan's request, Berry hand-delivered all the requested records to the village's attorney, who in turn forwarded them to Andwan.

### III. The Trial Court's Summary–Judgment Entry

{¶ 6} Even though Andwan's records request had been fulfilled, this litigation continued. A requestor's claim "for attorney fees in a public-records mandamus action is not rendered moot by the provision of the requested records after the case has been filed."[4] Both Andwan and the village asserted that no genuine issues of material fact remained, and both moved for summary judgment. The village asserted that it had responded to Andwan's request in a reasonable time and thus had not violated R.C. 149.43(B)(1). Andwan asserted that the village had failed to comply with its legal duties under the Public Records Act and that the violation of its own public-records policy constituted a separate violation of the Public Records Act. Andwan sought judgment in her favor, statutory damages, and attorney fees.

{¶ 7} The trial court conducted a hearing on December 9, 2009. At its conclusion, the court declared, "I find that there is a technical violation. I'm awarding $900 in damages. There will be no attorney fees." The trial court ultimately journalized an entry granting in part and denying in part the cross-motions for summary judgment. The court declared that "[t]he public records sought by the two public records requests at issue in this case having been produced after the commencement of this action, the request for the writ of mandamus is denied as being moot. While the Court finds [that the village] failed to timely respond affirmatively or negatively to [Andwan's] public records request, the Court considers such a violation of the public records Act to be a technical violation and, accordingly, [Andwan] shall only be awarded a total of $900 for statutory damages and no attorney fees shall be awarded."

### IV. The Village's Appeal of Its Public–Records Violation

{¶ 8} In the single assignment of error raised in its cross-appeal, the village argues that the trial court erred in entering summary judgment in favor of Andwan on the issue whether the village had violated the Public Records Act. The village contends that it fulfilled Andwan's records request within a reasonable time as required by R.C. 149.43(B)(1). Andwan contends that the village's response was tardy and that the village's failure to comply with its own public-records policy constituted a separate violation of R.C. 149.43.

---

4. *State ex rel. Cincinnati Enquirer v. Heath,* 121 Ohio St.3d 165, 2009-Ohio-590, 902 N.E.2d 976, ¶ 18; see also *State ex rel. Cincinnati Enquirer v. Ronan,* 124 Ohio St.3d 17, 2009-Ohio-5947, 918 N.E.2d 515, ¶ 10.

{¶ 9} The parties' election to address the issues by cross-motions for summary judgment demonstrates that both sides believed that there was no genuine issue of material fact in dispute and that the trial court was free to render a decision as a matter of law.[5] We review summary-judgment determinations de novo, without deference to the trial court's ruling.[6]

{¶ 10} The function of summary judgment is to determine from the evidentiary materials whether triable factual issues exist, regardless of whether the facts are complex.[7] Summary judgment is appropriately granted when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence viewed most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.[8]

{¶ 11} The Public Records Act provides that all public records shall be made available for inspection upon request.[9] The act provides citizens with a statutory right to inspect and to receive copies of public records so long as the request "does not unreasonably interfere with the workings" of the public office.[10] A person allegedly aggrieved by a public office's failure to make a public record available "may commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with [R.C. 149.43(B) ], that awards court costs and reasonable attorney's fees * * *, and, if applicable, that includes an order fixing statutory damages under [R.C. 149.43(C)(1) ]."[11]

{¶ 12} Under R.C. 149.43(B)(1), when a person makes a request for public records, the public office or person responsible for the public records shall promptly prepare the documents and make them available for inspection by the

---

5. See *Costanzo v. Nationwide Mut. Ins. Co.*, 161 Ohio App.3d 759, 2005-Ohio-3170, 832 N.E.2d 71, ¶ 10.

6. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243; see also *Polen v. Baker* (2001), 92 Ohio St.3d 563, 564–565, 752 N.E.2d 258.

7. See *Gross v. Western–Southern Life Ins. Co.* (1993), 85 Ohio App.3d 662, 666–667, 621 N.E.2d 412.

8. See Civ.R. 56(C); see also *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

9. See R.C. 149.43(B).

10. Sellers, Sealed with an Acquittal: When Not Guilty Means Never Having to Say You Were Tried (2003), 32 Cap.U.L.Rev. 1, 21–22; see also R.C. 149.43(B).

11. R.C. 149.43(C)(1); see also *State ex rel. Cincinnati Enquirer v. Allen*, 1st Dist. No. C–040838, 2005-Ohio-4856, 2005 WL 2249110, ¶ 9.

requestor at all reasonable times during regular business hours. Or, as here, if a requestor requires copies of the documents, the public office "shall make copies of the requested public record[s] available at cost and within a reasonable period of time."[12]

■ {¶ 13} The act does not define the term "a reasonable period of time." Consequently the determination whether the village complied with its "statutory duty to timely provide copies of the requested records depends upon all of the pertinent facts and circumstances."[13]

{¶ 14} In *State ex rel. Morgan v. Strickland,* a member of the Ohio House of Representatives requested records from the governor's office concerning the governor's proposed school-funding plan.[14] The request, made on March 12, 2009, was delivered to the governor's records officer on March 17.[15] The request sought copies of any and all documents and correspondence relating to the evidence-based school-funding model, as well as e-mail communications referring to the model or to education funding in general. The records officer's search of the governor's files yielded over 8,700 e-mail messages comprising over 74,000 pages.[16] On April 6, 2009, 17 business days after making his request, and 14 business days after the records officer had received the request, the requestor filed a mandamus action.[17]

{¶ 15} The next day, the governor's office provided some of the records and noted that it was working on the request and was reviewing the correspondence to redact protected information before releasing further records.[18] On April 9, 19 business days after the initial request, the governor's office provided 6,100 pages of additional records and indicated that it was continuing to review the requested e-mails.

{¶ 16} In ruling on the writ, the Supreme Court noted that, pursuant to R.C. 149.43(E)(1), the governor had adopted a public-records policy that required his

---

12.   R.C. 149.43(B)(1).

13.   *State ex rel. Morgan v. Strickland,* 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 10, citing *State ex rel. Consumer News Servs., Inc. v. Worthington Bd. of Edn.,* 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 37–38.

14.   See id. at ¶ 3.

15.   See id. at ¶ 4

16.   See id.

17.   See id. at ¶ 5.

18.   See id. at ¶ 6.

office to provide the requestor with an estimate of the time it would take to satisfy the request, an estimate of the cost, and an identification of items that might be exempted or redacted. Despite the failure to comply with his own public-records policy, mandated under R.C. 149.43(E)(1), the court held that "the governor [had] acted reasonably and within the parameters of R.C. 149.43 as well as his duly adopted public-records policy."[19] The court identified the broad scope of the records request and the governor's need to review the records prior to release as factors leading to its conclusion that the governor had acted reasonably.[20]

{¶ 17} Because the governor's office continued to provide requested documents as its search progressed, the court granted only a limited writ of mandamus to compel the continued review. The court denied the requestor's request for attorney fees and statutory damages.[21]

■ {¶ 18} The scope of the request and the resources available to the public office to process the request are key factors in determining whether a response has been provided in a reasonable period of time. For example, a requestor was granted a writ of mandamus to compel the city of Cleveland to provide access to routine motor-vehicle accident reports within eight days after the accidents had occurred because a delay of over 24 days was not reasonable.[22]

■ {¶ 19} Here, construing the pertinent facts and circumstances most strongly in favor of the requestor, we conclude that the village complied with its statutory duty to timely provide copies of the requested records.[23] The scope of Andwan's records request was broad, as in *State ex rel. Morgan,* and the public resources available to respond were limited, unlike those available to the governor's office, or to the city of Cleveland. Andwan's request encompassed hundreds of pages of documents, spanning nearly 15 years. The village's sole employee responsible for public-records requests, and one of only three full-time administrative personnel, was required to examine many hundreds of pages of records located throughout the village hall. Some of the records were in the possession of other village departments. Despite its limited resources, the village provided the requested records 15 business days after Andwan's request.

---

19. Id. at ¶ 13.

20. See id. at ¶ 172.

21. See id. at ¶ 20, 22.

22. See *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 689 N.E.2d 25.

23. See *State ex rel. Morgan v. Strickland,* 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, at ¶ 10.

{¶ 20} The village failed to comply with its own public-records policy by not acknowledging receipt of Andwan's request and by not informing her of its plans to address her broad records request. But we hold that, despite its noncompliance, the village, like the governor in *State ex rel. Morgan*, acted reasonably and in compliance with the duties imposed under R.C. 149.43.[24]

{¶ 21} Nothing in this decision is to be construed to imply that the promptness or the timeliness of the provision of public records cannot be a matter of great importance to a requestor. As the supreme court has noted, *"[w]hen* records are available for public inspection * * * is often as important as *what* records are available."[25] Even when the evidence in this case is construed most strongly in favor of the requestor, however, nothing in the record submitted for our review reflects any urgency in Andwan's records request. The village's sole assignment of error is sustained.

## V. *Andwan's Appeal for Attorney Fees and Statutory Costs*

■ {¶ 22} In Andwan's first assignment of error, in appeal No. C–100011, she contends that the trial court erred in failing to award mandatory attorney fees under R.C. 149.43(C)(2)(b)(i) and (ii). Even when a requestor's mandamus claim has been dismissed as moot, the requestor's claim for attorney fees is not necessarily rendered moot.[26] But even when the mandamus claim is moot, the award of fees must still be predicated upon the public office's violation of R.C. 149.43(B)(1).[27] Where the public office has not failed to respond to a request or to fulfill a request within a reasonable time, the requestor is not entitled to attorney fees.[28] Since our response to the village's single assignment of error has concluded that the village had not violated any duty under R.C. 149.43(B)(1), Andwan cannot demonstrate that she was entitled to judgment as a matter of law or otherwise on her claim for mandatory attorney fees.[29] Her first assignment of error is overruled.

---

24. See id. at ¶ 13.

25. (Emphasis sic.) *State ex rel. Wadd v. Cleveland*, 81 Ohio St.3d at 52, 689 N.E.2d 25; see, e.g., *State ex rel. Cincinnati Enquirer v. Ronan*, 124 Ohio St.3d 17, 2009-Ohio-5947, 918 N.E.2d 515 (public-records request for documents submitted by prospective candidates for a school superintendent position).

26. See *State ex rel. Cincinnati Enquirer v. Heath*, 121 Ohio St.3d 165, 2009-Ohio-590, 902 N.E.2d 976, at ¶ 18; see also *State ex rel. Cincinnati Enquirer v. Ronan* at ¶ 10.

27. See *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 661 N.E.2d 1049, syllabus.

28. See R.C. 149.43(B)(1); see also R.C. 149.43(C)(2)(b)(i) and (ii).

29. See Civ.R. 56(C).

{¶ 23} Andwan's second assignment of error, in which she claims that the trial court failed to provide an adequate explanation for its failure to award attorney fees, is rendered moot by our resolution of her first assignment of error.[30]

{¶ 24} The third assignment of error, in which Andwan contends that the trial court erred in not awarding $1,800 in statutory damages under R.C. 149.43(C)(1), is also overruled.  R.C. 149.43(C)(1) provides that a "if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with division (B) of this section," the requestor is entitled to recover statutory damages "fixed at one hundred dollars for each business day during which the public office or person responsible for the requested public records failed to comply with an obligation in accordance with division (B) of this section."  Because the village did not violate a duty under R.C. 149.43(B)(1), Andwan is not entitled to any fixed statutory damages.  Thus, she cannot demonstrate that she is entitled to judgment as a matter of law or otherwise on her statutory-damages claim.[31]  Andwan's third assignment of error is overruled.

## VI.   Conclusion

{¶ 25} Having overruled each of Andwan's assignments of error, and having sustained the village's sole assignment of error by holding that the village had not violated R.C. 149.43(B)(1) in fulfilling Andwan's request in a reasonable time, we reverse that portion of the trial court's judgment denying the village's motion for summary judgment on Andwan's claims and grant the village's motion for summary judgment.  We reverse the trial court's award of fixed statutory damages and affirm its denial of an award of attorney fees to Andwan.

Judgment accordingly.

CUNNINGHAM, P.J., and HENDON and MALLORY, JJ., concur.

---

30.   See App.R. 12(A)(1)(c).

31.   See Civ.R. 56(C).