[Cite as *State ex rel. Carr v. London Corr. Inst.*, 2014-Ohio-1325.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


|  |  |  |
|---|---|---|
| STATE OF OHIO EX REL. JAMES M. CARR, SR., | : | |
| | : | CASE NO.   CA2012-10-023 |
| Relator, | : | <u>D E C I S I O N</u> |
| | : | 3/31/2014 |
| - vs - | : | |
| | : | |
| LONDON CORRECTIONAL INSTITUTION, | : | |
| | : | |
| Respondent. | : | |
| | : | |


ORIGINAL ACTION IN MANDAMUS


James M. Carr, Sr., #A459-931, London Correctional Institution, P.O. Box 69, London, Ohio 43140, relator, pro se

Michael DeWine, Ohio Attorney General, Caitlyn A. Nestleroth, 150 East Gay Street, 16th Floor, Columbus, Ohio 43215, for respondent


**<u>Per Curiam</u>.**

{¶ 1}  The current case is before this court pursuant to a complaint for a writ of mandamus brought by relator, James M. Carr, Sr., seeking production of public records by respondent, London Correctional Institution, according to the Ohio Public Records Act. Relator is also seeking statutory damages for respondent's nonproduction of the requested records.

{¶ 2} Carr is an inmate incarcerated in the London Correctional Institution (the prison). In February 2012, Carr became aware of an interoffice memorandum sent by a prison chaplain, Steven Cahill, to the prison mailroom employees. The memorandum listed ministries that regularly sent religious materials to inmates at the prison, and Carr requested a copy of the memorandum through a public records request.

{¶ 3} During December 2011 to January 2012, the prison's mailroom staff was replaced by a new group of contract workers. The new workers, who were unaware of how to process incoming religious materials, needed guidance on how to process and distribute the materials. In response to the need, Chaplain Cahill wrote the memorandum to identify which religious organizations were known to the prison's religious services for regularly sending religious materials to inmates. Chaplain Cahill's memorandum was first sent to the mailroom employees on January 30, 2012. A different prison chaplain, Thomas Davis, resent the memorandum at the request of mailroom personnel on March 5, 2012. Chaplain Davis changed the date on the memorandum and added his name as a sender, but the body of the memorandum was identical to the original sent by Chaplain Cahill.

{¶ 4} On March 5, 2012, Carr made a written public request to Vickey Justus, the Acting Administrative Assistant to the prison's warden. The request reads, in pertinent part:

> I went to see Chaplain Cahill on 2/28/2012, and requested that Chaplain Cahill provide me with a copy of an interoffice memo sent from his office to the mail room. You can contact Chaplain Cahill to find out exactly the memo I am speaking of. I request a copy of the following record: I request a copy of the inter-office memo between the Chaplains [sic] office and the mail room. This memo was sent during January or February of 2012. This memo contains information related to religious ministries regularly dealt with by the Chaplains [sic] office. This memo was sent to the mail room to assist the mail room with the religious material received by the institution.

{¶ 5} On March 8, 2012, Justus responded to Carr's request and denied such, stating that the request was "ambiguous, overbroad and unduly burdensome to produce." Justus

also indicated that because of the ambiguity, overbreadth, and burden, the Ohio Public Records Act did not require production as stated in R.C. 149.43(B)(2).

{¶ 6}  On March 15, 2012, Carr submitted a revised public records request to Justus. This revised version requested "copies of all e-mails and interoffice memo's [sic] sent from Chaplain Cahill, to the mail room (including it's supervisor's [sic]) during the months of January and February for 2012."  Justus responded to Carr's amended request, denying it again.  Justus stated, "again, your request is ambiguous, overbroad, and unduly burdensome to produce.  Such requests do not require production of records per R.C. 149.43(B)(2).  Once you narrow your request, you may resubmit it."

{¶ 7}  On March 21, 2012, Carr sent a "kite" to Chaplain Cahill stating that he had seen Chaplain Cahill in his office on February 27, 2012 and wanted a copy of the interoffice memorandum that Chaplin Cahill sent to the mailroom.[1]  Carr stated in the kite that Chaplain Cahill had declined to give him a copy of the memorandum, and Carr stated, "that would be fine and I would request it through a public records request that I would need to file with Mrs. Vickey Justus."  Carr used the kite to ask Chaplain Cahill when he sent the memorandum to the mailroom.  In response to Carr's kite, Chaplain Cahill explained that he did not have the original date and that "the last updated list for regularly utilized ministries that send literature was March 5, 2012.  This is not an approved list.  All materials must pass the policy requirements and are subject to denial."

{¶ 8}  On April 9, 2012, Carr sent two public records requests to Justus.  The first request sought "a copy of all interoffice memos and e-mails sent by Chaplain Cahill to the mail room or it's [sic] supervisors for the month of February 2012."  On April 19, 2012, Justus responded to this first request by again stating that the request was ambiguous, overbroad,

---

1. Carr defined a kite as a prison correspondence written by an inmate to a member of the prison staff.

and unduly burdensome to produce. Justus again suggested that Carr narrow his request and resubmit it.

{¶ 9} Carr's second April 9, 2012 request sought (1) a "copy of all interoffice memos and e-mails sent by Chaplain Cahill to the mail room or it's [sic] supervisors on 3/5/12," and (2) a "current copy of your records retention schedule." Justus responded to the second request by making available the March 5, 2012 memorandum and advising Carr that the records retention schedule was 46 pages. Justus informed Carr that copying costs at five cents per page would total $2.30, and that Carr's request would be fulfilled once he submitted payment for the copying fees.

{¶ 10} On April 24, 2012, Carr filed an informal complaint alleging the denial of public records to the prison's warden, Deborah Timmerman-Cooper. Within the complaint, Carr alleged that Justus continually denied his requests for the interoffice memorandum and emails from Chaplain Cahill to the mailroom employees. Carr also indicated that he would submit payment for copying fees, but only once all of his requests were met. Warden Timmerman-Cooper replied that once the payment was received, "your complete request will be filled."

{¶ 11} On May 1, 2012, Carr sent Justus a cash slip that did not contain a specific amount designation. Carr included a note that he did not fill out the amount "since I do not know how much the total for my request will be. Could you please fill in the amount that will be needed when you complete my public records request?"

{¶ 12} On May 22, 2012, Carr filed a grievance with the prison's Institutional Inspector. Carr's grievance was substantially similar to the complaint contained within his informal complaint to Warden Timmerman-Cooper. Carr's grievance was denied on June 7, 2012. However, the Institutional Inspector gave Carr another copy of the March 5, 2012 memorandum from Chaplains Cahill and Davis to the mailroom.

{¶ 13} On June 14, 2012, Carr appealed the resolution of his grievance to the prison's Assistant Chief Inspector. Carr argued that the March 5, 2012 memorandum provided to him was not the original document he requested, but rather, was an "updated" list of the religious organizations that sent material to the inmates. The disposition of Carr's grievance was affirmed on July 9, 2012. In affirming the grievance, the Assistance Chief Inspector stated,

> This office has read all of the information sent regarding your request and complaint. In order for the institution and this office to help you in this matter, it would be helpful if you state in your ICR [informal complaint resolution] and NOG [notice of grievance] what you are seeking as you did in your subsequent revised public records request which was very clear and complete. From the information in your ICR and NOG your request was unclear, this office did not find staff violated a department policy, administrative rule or procedure in this instance.

{¶ 14} On October 18, 2012, Carr filed a petition with this court for a writ of mandamus. Carr indicated in his petition that pursuant to 42 U.S.C. 1983, he was preparing a civil rights action against the prison for its discrimination against his white-separatist religious organization. Carr essentially claimed that the prison staff denied his public records request because it knew that Chaplain Cahill's memorandum could be used as evidence against the prison in Carr's suit to show that the prison did not permit his white-separatist religious organization to distribute religious materials to inmates through the mail as an entity recognized by the prison's religious services. Carr also asserted that prison officials provided only the updated memorandum, but continually refused to provide the memorandum in its original state.

{¶ 15} Both parties filed motions for summary judgment. In its motion for summary judgment, the prison attached a copy of the original memorandum, dated January 30, 2012, which is virtually identical to the March 5, 2012 version given to Carr. The only difference between the two versions is that Chaplain Davis' name is added as a sender, and the date is

changed on the second memorandum. The prison also asserted in its motion for summary judgment that prison staff was confused by Carr's request for the original memorandum when that memorandum was never changed in any significant manner before it was resent on March 5, 2012.

{¶ 16} Also attached to the prison's motion for summary judgment is an affidavit of Chaplain Davis in which he described the manner in which he added his name to the memorandum, changed the date, and resent the memorandum at the request of the mailroom employees. Justus' affidavit is also included, in which she indicates that she was unable to determine what Carr was requesting based upon his first two requests of March 5, 2012 and March 15, 2012. She also averred that she denied Carr's first April 9, 2012 request that asked for all interoffice memoranda and emails sent by Chaplain Cahill to the mailroom for the month of February 2012 because such request was overbroad. Justus averred that once Carr submitted his second April 9, 2012 request for the March 5, 2012 memorandum and a current copy of the records retention schedule, she considered that request specific enough to act upon. Once Carr submitted payment, he was provided copies of the records retention schedule and a copy of the March 5, 2012 memorandum.

{¶ 17} Within Carr's petition for a writ of mandamus, he sought an order directing the prison to make his requests available to him, and also requested statutory damages pursuant to R.C. 149.43(C)(1) in the amount of $100 per day for each day that the prison fails to comply with his request. The prison also moved for summary judgment, asking that this court deny Carr's petition for a writ of mandamus. This court denied both motions for summary judgment, finding that while Carr's March 5, 2012 request was ambiguous, genuine issues of material fact remained regarding Carr's subsequent requests of March 15, 2012 and the first request of April 9, 2012.

{¶ 18} Carr and the prison then filed briefs with this court regarding Carr's petition for a

writ of mandamus. After reviewing the submitted evidence, we turn to the merits of relator's mandamus claim.

## Ohio's Public Records Act

{¶ 19} "The Public Records Act reflects the state's policy that 'open government serves the public interest and our democratic system.'" *State ex rel. Morgan v. City of New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, ¶ 28, quoting *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, ¶ 20. Courts construe Ohio's Public Records Act liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *Id.*

{¶ 20} According to R.C. 149.43(B)(1):

> Upon request and subject to division (B)(8) of this section, all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. Subject to division (B)(8) of this section, upon request, a public office or person responsible for public records shall make copies of the requested public record available at cost and within a reasonable period of time.

{¶ 21} R.C. 149.43(C)(1) sets forth the proposition that an aggrieved party may pursue a mandamus action and be entitled to statutory damages upon a public entity's failure to provide public records in accordance with the statute.

> If a person allegedly is aggrieved by the failure of a public office or the person responsible for public records to promptly prepare a public record and to make it available to the person for inspection in accordance with division (B) of this section or by any other failure of a public office or the person responsible for public records to comply with an obligation in accordance with division (B) of this section, the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section, that awards court costs and reasonable attorney's fees to the person that instituted the mandamus action, and, if applicable, that includes an order fixing statutory damages under division (C)(1) of this section.

> * * *

If a requestor transmits a written request by hand delivery or certified mail to inspect or receive copies of any public record in a manner that fairly describes the public record or class of public records to the public office or person responsible for the requested public records, except as otherwise provided in this section, the requestor shall be entitled to recover the amount of statutory damages set forth in this division if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with division (B) of this section.

The amount of statutory damages shall be fixed at one hundred dollars for each business day during which the public office or person responsible for the requested public records failed to comply with an obligation in accordance with division (B) of this section, beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars. The award of statutory damages shall not be construed as a penalty, but as compensation for injury arising from lost use of the requested information. The existence of this injury shall be conclusively presumed. The award of statutory damages shall be in addition to all other remedies authorized by this section.

{¶ 22} "It is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue." *Morgan*, 2006-Ohio-6365 at ¶ 29. R.C. 149.43(B)(2) permits a custodian to deny a public records request if that request is ambiguous or overly broad so that the custodian "cannot reasonably identify what public records are being requested." "A records request is not specific merely because it names a broad category of records listed within an agency's retention schedule." *State ex rel. Zidonis v. Columbus State Community College*, 10th Dist. Franklin No. 10AP-961, 2011-Ohio-6817, ¶ 5. When identifying the records within a given request, the Public Records Act does not contemplate that a requesting party has the right to a "complete duplication of voluminous files kept by government agencies." *State ex rel. Glasgow v. Jones,* 119 Ohio St.3d 391, 2008-Ohio-4788, ¶ 17

### Carr's March 15, 2012 and April 9, 2012 Requests

{¶ 23} In Carr's two public records requests that remain at issue, he asked the prison

to produce (1) "copies of all e-mails and interoffice memo's [sic] sent from Chaplain Cahill, to the mail room (including it's supervisor's [sic]) during the months of January and February 2012," and (2) a "copy of all inter-office memos and e-mails sent by Chaplain Cahill to the mail room or it's [sic] supervisors for the month of February 2012." Although Carr has since been provided a copy of the original memorandum from January 31, 2012 from Chaplain Cahill to the mailroom employees, he contends that he is still entitled to any and all memos and emails sent from Chaplain Cahill to the mailroom over the two-month period. Justus originally denied Carr's requests because those requests were overbroad. We agree.

{¶ 24} Instead of providing the prison with a specific request by identifying with reasonable clarity the records at issue, Carr simply asked for an entire body of communication. The request for *all* emails and memoranda sent between Chaplain Cahill and the mailroom employees did not make any reference to a particular work-related activity, such as training the new employees on sorting religious material, or some equally-specific request.

{¶ 25} Rather, Carr expected the prison to duplicate its entire volume of emails and memoranda between Chaplain Cahill and the mailroom and/or its supervisors over a two-month period without any clarification or restrictions. *See State ex rel. Zauderer v. Joseph*, 62 Ohio App.3d 752, 756 (10th Dist.1989) (noting that "a general request, which asks for everything, is not only vague and meaningless, but essentially asks for nothing. At the very least, such a request is unenforceable because of its overbreadth. At the very best, such a request is not sufficiently understandable so that its merit can be properly considered").

{¶ 26} We note that "R.C. 149.43 contemplates that the requester and the public-records custodian cooperate in fulfilling a request." *State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, ¶ 18. If a requester makes an ambiguous or overly broad request, R.C. 149.43(B)(2) requires the custodian to "provide the requester with an

opportunity to revise the request * * *."  Justus twice informed Carr that his requests were ambiguous and overbroad, and twice Carr responded by actually widening his request rather than pinpointing what specific record he was seeking.

{¶ 27} Again, Carr's first request, which this court already concluded during the summary judgment phase was ambiguous, requested "a copy of the inter-office memo between the Chaplain's office and the mail room.  This memo was sent during January or February of 2012.  This memo contains information related to religious ministries regular dealt with by the Chaplins [sic] office."  Within the request, Carr explained that he had spoken to Chaplain Cahill about the memorandum, that Chaplain Cahill could be consulted for help in locating the memorandum, and also gave a synopsis of the memorandum's purpose.  Even so, this court found the request to be ambiguous because the request did not specifically or particularly describe the document Carr was requesting.

{¶ 28} Instead of making a subsequent request that specifically and particularly described the request in better detail, Carr simply broadened his request to include any and all memoranda and emails between Chaplain Cahill and the mailroom and/or its supervisors. These requests also broadened the timeframe to include two months, and asked for every single communication via email or memorandum between Chaplain Cahill and the mailroom and/or its supervisors that occurred over that two-month period.  The requests, however, never became specific enough for Justus to fulfill because of the overbreadth inherent within them.

{¶ 29} We compare these two requests to the second request Carr made on April 9, 2012 in which he asked for a "copy of all interoffice memos and e-mails sent by Chaplain Cahill to the mail room or it's [sic] supervisors on 3/5/12," and a "current copy of your records retention schedule."  This request was not ambiguous because it specifically identified that Carr was seeking the interoffice memoranda sent by Chaplain Cahill to the mailroom or its

supervisors on a specific date, as well as the prison's records retention schedule. Justus filled this request because she was able to specifically target what documents Carr requested, and was able to access and provide such with clarity.

{¶ 30} Carr's two requests that remain an issue in the petition currently before this court were overly broad. Carr's requests were too general, and sought an entire duplication of communications through all memoranda and all emails between Chaplain Cahill and the mailroom and/or its supervisors. By asking for everything, while not offering any specific reference to a particular work-related activity, Carr's requests were overly broad. Therefore, the prison was proper in denying Carr's request as being overly broad, and the writ is denied.

**Statutory Damages**

{¶ 31} Carr also moves this court to order the prison to pay statutory damages. "[I]n general, providing the requested records to the relator in a public-records mandamus case renders the mandamus claim moot." *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, ¶ 43. However, the production of requested documents does not, according to the Public Records Act, moot a claim for statutory damages, court costs, and attorney fees. *State ex rel. Cincinnati Enquirer v. Heath*, 121 Ohio St.3d 165, 2009-Ohio-590, ¶ 18. According to R.C. 149.43(C)(1):

> If a person allegedly is aggrieved by the failure of a public office or the person responsible for public records to promptly prepare a public record and to make it available to the person for inspection in accordance with division (B) of this section or by any other failure of a public office or the person responsible for public records to comply with an obligation in accordance with division (B) of this section, the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section, that awards court costs and reasonable attorney's fees to the person that instituted the mandamus action, and, if applicable, that includes an order fixing statutory damages under division (C)(1) of this section.

{¶ 32} A relator is not entitled to statutory damages unless the custodian failed to

comply with an obligation in accordance with R.C. 149.43(B). *State ex rel. Patton v. Rhodes*, 129 Ohio St.3d 182, 2011-Ohio-3093, ¶ 21; R.C. 149.43(C)(1). Whether a respondent complied with the statutory duty to timely provide copies of the requested records depends upon all of the pertinent facts and circumstances. *State ex rel. Morgan*, 2009-Ohio-1901 at ¶ 10.

{¶ 33} The record is clear that Carr made his public records request in order to obtain a copy of the memorandum written by Chaplain Cahill to the mailroom, which was created in order to address the new employees' concerns regarding sorting religious mail. Carr was aware that within the memo, Chaplain Cahill included a nonexhaustive list of religious institutions known by the prison's religious services to send inmates mail. This memorandum was originally dated January 30, 2012, and later duplicated and resent in its exact form on March 5, 2012, with the only changes being the date and Chaplain Davis' name added as a sender. Once Carr specifically requested the March 5, 2012 memorandum, such was provided to him by both Justus and Inspector Blackwell, thus fulfilling his public records request for the memorandum he sought.

{¶ 34} Carr argues that the addition of Chaplain Davis' name and the changed date rendered the two documents different, requiring production of both. However, we disagree. The two changes to the document merely added an additional sender and updated the date on which the memorandum was resent. The body of the memorandum, however, remained completely unchanged.

{¶ 35} The circumstances of this case indicate that Carr wants to use the memorandum to support his cause of action alleging discrimination by the prison against his white-separatist religious organization. The memorandum lists the religious organizations known to the prison's religious services, and that list remained the same in both memoranda. The addition of Chaplain Davis as a sender and the change of the date do not in any way

- 12 -

indicate that the substance of the memoranda changed. Instead, the memoranda, for all intents and purposes, were identical.

{¶ 36} In a similar situation, this court found that a custodian fulfilled a request for public records by providing an updated version of the request. *State ex rel. Doe v. Register*, 12th Dist. Clermont No. CA2008-08-081, 2009-Ohio-2448. In *Register*, the relator requested draft copies of the minutes from a township's board of trustees meeting. The custodian was not able to produce the draft copies, but made available the official minutes that had since been adopted and formalized by the board. The custodian averred that the draft minutes were identical to the officially-adopted minutes, save the fact that they had since been officially adopted. Because the body and substance of the official meeting minutes were identical to the draft minutes, we found that relator's request had been fulfilled when he was given the official minutes.

{¶ 37} Similarly, and since the inception of his very first request, Carr requested the memorandum written by Chaplain Cahill to the mailroom indicating which religious entities sent materials to inmates for distribution. The body and substance of the resent memorandum were identical to the original, so that Carr's request was fulfilled once the prison gave Carr copies of the March 5, 2012 memorandum. This is especially true where the prison attached the original version of the memorandum to its motion for summary judgment. Carr was given the opportunity to see that the bodies of the memoranda are identical, and his argument that the prison has still failed to produce the original memo is unreasonable.

{¶ 38} The prison had a statutory duty to provide Carr with the public records he requested once Carr made a request that was not ambiguous or overbroad. The prison satisfied that duty when it fulfilled Carr's second April 9, 2012 request, which was Carr's only valid request. Given the pertinent facts and circumstances of this case, we find that relator is

not entitled to statutory damages because the prison complied with its obligation in accordance with R.C. 149.43(B).[2]

**{¶ 39}** Writ denied.

HENDRICKSON, P.J., PIPER and M. POWELL, JJ., concur.

---

2. We also note that the prison has moved for dismissal of Carr's petition because of technical flaws in Carr's affidavit of past lawsuits, which is required pursuant to R.C. 2969.25(A). However, given our disposition of the merits of Carr's petition, we find the prison's argument moot.