[Cite as *Gupta v. Cleveland*, 2018-Ohio-3475.]

| | |
|---|---|
| SANDHYA GUPTA | Case No. 2017-00840PQ |
| Requester | Special Master Jeffery W. Clark |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| CITY OF CLEVELAND | |
| Respondent | |

{¶1} On July 19, 2017, requester Sandhya Gupta sent a letter to respondent City of Cleveland making fourteen requests to inspect records relating to waste collection and disposal, and records of specific city employees. (Complaint at 2-4.) On July 21, 2017, the Cleveland Department of Law, Public Records Section (PRS) acknowledged receipt of the letter, stating that it was being processed for a response. (*Id.* at 5.) The PRS advised that "[a]dditional time may be required, due to the extent of this request." (*Id.*) On August 21, September 1, and October 10, 2017, Gupta inquired as to the status of the requests. (*Id.* at 12, 11, 9.) In each instance, the city responded that it was still processing the requests. (*Id.* at 11, 10, 8.)

{¶2} On September 1, 2017, Gupta sent a letter making twelve additional requests to inspect records of specific city employees, and records relating to waste-transfer facilities. (*Id.* at 14-16.) On September 5, 2017, the PRS acknowledged receipt, noting that "additional time will be required to gather the information that you have requested." (*Id.* at 17.) On October 10 and October 12, 2017, Gupta inquired as to the status of the requests. (*Id.* at 20, 19.) The PRS responded on October 12, 2017 that "[y]our request is still processing. Additional time is needed." (*Id.* at 19.)

{¶3} On October 16, 2017, Gupta filed a complaint under R.C. 2743.75 alleging denial of access to public records in violation of R.C. 149.43(B), and the case was referred to mediation. Prior to the first session, the City sent Gupta a letter stating that

most of the requests were denied as ambiguous, overly broad, or not amenable to disclosure as a "public record," but that records responsive to one request were already available online, and that records responsive to several of the requests could be produced. (Response, Exhibit A.) The parties then engaged in five mediation sessions. From December 14, 2017 through April 6, 2018, the City delivered 4,371 pages of records to Gupta (Reply at 5, 7; CDs 1 and 2; Indexes to CDs), and offered her the opportunity to inspect an additional 20,000 pages. (Kretch Aff. at ¶ 6.)

{¶4} On March 28, 2018, the court was notified that the case had not been fully resolved in mediation. On April 9, 2018, the City filed an answer (Response) denying most of the requests as overly broad, and attesting that it had produced records responsive to all the requests that reasonably identified specific records. The City alleged that it had provided records responsive to most of the overly broad requests as well. On May 22, 2018, Gupta filed a reply, and a copy of the records copied to her by the City. On June 13, 2018, the City filed a sur-reply.

{¶5} For reasons that follow, I conclude that the City's production of records to July 19, 2017 requests Nos. 3 (in part), 4 and 5, and September 1, 2017 requests Nos. 5 and 9 has rendered these claims moot. In addition, Gupta has accepted negotiated responses from the City in satisfaction of July 19, 2017 requests Nos. 1, 2, 6 and 10, rendering these requests moot as well. I find that the eighteen remaining requests were either properly denied as ambiguous and/or overly broad, or sought records that did not exist at the time of the request.

**Remedy Under R.C. 2743.75**

{¶6} Ohio's Public Records Act, R.C. 149.43, provides a remedy for production of records under R.C. 2743.75 if the court of claims determines that a public office has denied access to public records in violation of R.C. 149.43(B). The policy underlying the Act is that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft,* 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20.

Therefore, the Act is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records. *State ex rel. Glasgow v. Jones,* 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 13. Claims under R.C. 2743.75 are determined using the standard of clear and convincing evidence. *Hurt v. Liberty Twp.*, 5th Dist. Delaware No. 17CAI050031, 2017-Ohio-7820, ¶ 27-30.

**Suggestion of Mootness**

{¶7} A public office may produce records prior to the court's decision, and thereby render a claim for production under R.C. 149.43(B)(1) moot. *State ex rel. Striker v. Smith*, 129 Ohio St.3d 168, 2011-Ohio-2878, 950 N.E.2d 952, ¶ 18-22. The City asserts that the claim for records responsive to July 19, 2017 request No. 4 has been rendered moot by production during mediation. Gupta agrees to "accept this response without further dispute." (Reply at 12.)

With regard to July 19, 2017 request No. 5, the City attests that

> In response to the third question [*sic.* - as numbered in the court's order] under the "July 19 2017 Requests" heading, I have provided the Requester, Ms. Sandhya Gupta, each and every organizational chart of the City of Cleveland Division of Waste that was within the City's possession at the time of her July 19, 2017 request.

(Kretch Aff. at ¶ 8.) Gupta provides no evidence to the contrary. The City has thus rendered the claim as to this request moot.

{¶8} The City further asserts that the claims based on September 1, 2017 requests Nos. 5, 9, and 10 have been rendered moot by production during mediation. Gupta agrees that she has been provided with all responsive records for request No. 5, and states that she will accept the response to request No. 9 without further dispute. (Reply at 18-19.) While Gupta agrees that she has been provided with "computer images of a database reflecting the information" described in request No. 10, she states that the City did not provide the "actual signed acknowledgement or the certificates" and thus does not concede that this claim is moot. (Reply at 19.)

{¶9} With respect to July 19, 2017 request No. 3, the City presented roughly 20,000 pages of responsive records for inspection by Gupta's designee, Lidia Mowad. (Kretch Aff. at ¶ 6; Aff. Exhibit A.) Mowad did not accept the opportunity to inspect the records. A public office is only obligated to make records available for inspection at the site where they are stored. *State ex rel. Karasek v. Haines*, 2nd Dist. Montgomery No. 16490, 1998 Ohio App. LEXIS 4135, *7 (1998). Records need only be made available for inspection "at all reasonable times during regular business hours." R.C. 149.43(B)(1). *Strothers v. Norton*, 131 Ohio St.3d 359, 2012-Ohio-1007, 965 N.E.2d 282, ¶ 8, 13. *Smith v. Degen*, 3rd Dist. Allen No. 1-12-04, 2012-Ohio-3749, ¶ 7, 18-19, 26-27.

{¶10} Gupta expressly requested "to inspect" the records (Complaint at 2, 4), and concedes these records were presented for inspection (Reply at 12), but nevertheless complains that "the city has produced no copies." (Underline *sic*.) (*Id*. at 2, 12) In her request letter, Gupta claimed that R.C. 149.43(B)(6) "gives a requester the right to choose the medium in which the records are received for inspection," and asked the City to "provide .pdf files of the records" for her inspection. However, R.C. 149.43(B)(6) provides choice of medium only when a person requests *copies* of records:

> When the person *seeking the copy* makes a choice under this division, the public office or person responsible for the public record shall provide a copy of it in accordance with the choice made by the person seeking the copy.

(Emphasis added.) *Id*. When a requester asks only to inspect records, the public office has no duty to deliver the records to the requester's doorstep. *State ex rel. Nelson v. Fuerst*, 66 Ohio St.3d 47, 607 N.E.2d 836 (1993) (statutorily superseded by R.C. 149.43(B)(7) only as to requests for copies). In making records available for inspection, "[t]he word available is not synonymous with available by mail." (Underlining *sic*.) *State ex rel. Hairston v. Pollutro*, 8th Dist. Cuyahoga No. 74685, 1998 Ohio App. LEXIS 3017, *3, citing *Nelson*.

{¶11} Of course, a public office has discretion to voluntarily send copies instead of arranging for inspection, as the City did for many of the records here. However, a requester asking for inspection cannot compel the public office to deliver records to an offsite location. The receipt of .pdf files is not "inspection." It is manifestly the delivery of copies by electronic transmission, *see* R.C. 149.43(B)(6) and (7), as demonstrated by Gupta's filing with this court of the copies of 4,371 pages she received as .pdf files. (CDs 1 and 2.) Accordingly, I find that the City's duty to allow Gupta to inspect 20,000 pages responsive to July 19, 2017 request No. 3 was fulfilled when it presented those records to Gupta's designee for physical inspection at a City office.

{¶12} Based on the above, I recommend that Gupta's claims for production of records be denied as moot with respect to July 19, 2017 requests Nos. 3 (in part), 4 and 5, and with respect to September 1, 2017 requests Nos. 1, 2, 5, 6, 9 and 10, and to the extent that other responsive records have been provided for the remaining requests. Before applying the City's asserted defenses to the remaining requests, the following sections address several overarching legal issues.

**Review Limited to Requests Made and Denied Prior to Filing of Complaint**

{¶13} R.C. 149.43(B)(1) requires a public office, upon request, to promptly make all responsive public records available to the requester. Full withholding, or partial redaction, of a requested record constitutes a denial. *Id.* This court may compel production of public records only if it "determines that the public office or person responsible for public records denied the aggrieved person access to the public records in violation of division (B) of section R.C. 149.43." R.C. 2743.75(F)(3). A claim that a public office has failed to comply with R.C. 149.43(B) by denying production of records is not ripe until a specific request has been made, and denied. *See Strothers v. Norton, supra*, at ¶ 14; *State ex rel. Bardwell v. Cordray*, 181 Ohio App.3d 661, 664, 2009-Ohio-1265, 910 N.E.2d 504, ¶ 5.

{¶14} In her reply, Gupta attempted to introduce privileged mediation communications containing discussion of proposed expansion, narrowing, and other modifications to her requests. By order of June 12, 2018 these communications and references thereto were stricken from the record. Without considering what, if any, effect such evidence might have had, there is no evidence before the court that Gupta made, or the City has denied, any requests other than those documented in the complaint. Judicial resolution of the remaining requests is thus limited to the claims as presented in the complaint.

**Non-existent Records**

{¶15} A public office has no duty to provide records that do not exist, or that it does not possess. *State ex rel. Gooden v. Kagel*, 138 Ohio St.3d 343, 2014-Ohio-869, 6 N.E.3d 471, ¶ 5, 8-9. The office may establish by affidavit that all records have been provided to the extent they exist. *State ex rel. Fant v. Flaherty,* 62 Ohio St.3d 426, 427, 583 N.E.2d 1313 (1992); *State ex rel. Toledo Blade Co. v. Toledo-Lucas County Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 15. Although the office's affidavit may be rebutted with evidence showing a genuine issue of fact, a requester's belief based on inference and speculation does not constitute evidence necessary to establish that a document exists. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, ¶ 22-26. *See State ex rel. Morabito v. Cleveland*, 8th Dist. 98829, 2012-Ohio-6012, ¶ 14; *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 8th Dist. Cuyahoga No. 83057, 2004-Ohio-1261, ¶ 9.

{¶16} The City provides evidence 1) that it did not generate duplicate pay stubs in 2001 (Moss-Walker Aff. at ¶ 5), 2) that no Ludwig voicemails remained in existence on the date they were requested (Ludwig Aff. at ¶ 5) and 3) that the City provided Gupta with all organizational charts of the City Division of Waste in its possession at the time of the request. (Kretch Aff. at ¶ 8.) Gupta has submitted no evidence to the contrary. I

find that the City has demonstrated the non-existence of these records, rendering the corresponding claims for production of records moot.

**Demand to Search Backup Server**

{¶17} Gupta asserts that the City violated R.C. 149.43(B) by not searching its backup server for "emails that were deleted in violation of the City's retention policy." (Reply at 2, 9, 17.) To be entitled to the recovery of deleted emails, a requester bears the burden to make a *prima facie* showing that requested emails were deleted in violation of the office's records retention and disposition policy. *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 29. In the absence of such a showing, the public office will be presumed to have properly performed its duties and not to have acted illegally but regularly and in a lawful manner. *Id.* Where email has been properly disposed of (deleted) in accordance with the office's records retention policy, there is no entitlement to those records under the Public Records Act. *Id.* at ¶ 23. *Accord Glasgow* at ¶ 24, fn. 1.

{¶18} Gupta claims that deletion of the email of a past employee upon the employee's retirement was a violation because "retirement is not a basis for destroying records under the City's record-retention schedule." (Reply at 9.) Although the ambiguous mediation communication on which Gupta bases this assertion has been stricken from the record (Order of June 12, 2018), it would nevertheless have failed to establish a *prima facie* showing of improper disposal. The fact that a public office takes the occasion of employees' departures to delete emails from their desktop computers and email inboxes says nothing about the propriety of the deletion. If the office is presumed to have saved and maintained all of the employee's emails that constituted "records" of official business in appropriate subject matter files, and deleted only residual emails that were duplicates, personal, transient, or otherwise subject to disposal, then the requester must provide specific *prima facie* evidence that required

records are missing. *Compare Seneca Cty*. at ¶ 30-34. I find that Gupta has not made the required *prima facie* showing of improper disposal of records in this case.

**Searching Personal Communication Devices**

{¶19} The City's policy for use of personal electronic devices provides that "Personal cell phones may be required to be used for company business on a sporadic basis." (Sur-reply, Personal Electronic Devices Policy). Gupta argues that the City violated R.C. 149.43(B) by not automatically requiring past and present employees to search for documents responsive to her requests on their personal computers, cell phones, and other devices. (Reply at 2, 9-10, 14-20.) Gupta cites no Ohio law requiring public offices to routinely request employees to search personal devices in response to public records requests.  The cases she cites as implying such a requirement are inapposite. Gupta cites an order issued in *State ex rel. Bott Law Group, LLC v. Ohio Dept. of Natural Res.*, 10th Dist. Franklin No. 12AP-448, 2013-Ohio-5219, ¶ 24-29, 51, to search for records stored only on state employee's "personal computers."[1] However, this order referred to the employees' individual office-issued computers, as opposed to a shared server, and did not require the search of any employee's private computer. *Id*. In citing *Glasgow, supra*, Gupta notes that a public official voluntarily conceded some of the emails she sent in her official capacity had been kept on her personal email account, and produced them as records subject to disclosure under R.C. 149.43. *Id*. at ¶ 23. Given this concession, the court determined it "need not address the issue whether an e-mail message sent from or to a private account can be a public record." *Id*. The issue in this case is not whether email to or from a private account can *ever* be a public record, but whether a public office must search employees' private accounts on

---

[1] "Personal Computer (PC) – a small computer, usually one that comes with Microsoft Windows. Designed for use by one person at any time." *Black's Law Dictionary Free Online Legal Dictionary*, 2nd Ed. (Accessed June 19, 2018).

the off-chance that they may contain business records of the office. Neither case cited by Gupta imposes such a requirement.

{¶20} To be sure, a public office has a duty to retrieve public records from where they are kept by the office. However, the public office has no duty to detail for the requester the steps taken to search for those records. *McCaffrey, supra*, at ¶ 26. Gupta provides no evidence that the official copy of any requested record has been kept solely[2] on a City employee's personal device. The City must therefore be presumed to have performed its duties regularly and in a lawful manner. *Seneca Cty.* at ¶ 29. I find that Gupta fails to show that the City's retrieval process violated R.C. 149.43(B).

{¶21} Finally, with regard to creation and retention of official records, R.C. 149.40 provides that a public office shall cause to be made:

> only such records as are necessary for the adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and for the protection of the legal and financial rights of the state and persons directly affected by the agency's activities.

The law provides various remedies for claims that records have been disposed of improperly, including injunction, forfeiture, replevin, and criminal prosecution. *See e.g.*, R.C. 149.351, R.C. 149.352, R.C. 2913.42. However, to the extent Gupta seeks to sanction the City's alleged failure to create, retain, or properly dispose of records here, her complaint does not state a claim for which relief is available under R.C. 2743.75.

**Ambiguous and Overly Broad Requests**

{¶22} A person may request public records regardless of intended use, including use in civil litigation. *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821

---

[2] Even where an official used a personal account in their official capacity, either by choice or because the public office did not provide office email accounts to employees, requesting email from the private account may not be justified if the office's official, record copies of the communication are kept in files maintained by the public office. *See Neff v. Knapp*, Ct. of Cl. No. 2017-00876PQ, 2018-Ohio-2357, ¶ 10.

N.E.2d 564. However, the standards required for a proper public records request are distinctly different from the standards for civil discovery instruments. A public records requester must reasonably identify the particular, existing records sought, and any request that is ambiguous or overly broad may be denied. R.C. 149.43(B)(2). Thus, a broad discovery-style demand to conduct an officewide search for records containing information relevant to a pending action is often improper when submitted as a public records request. *State ex rel. Thomas v. Ohio State Univ*. 71 Ohio St.3d 245, 246, 643 N.E.2d 126 (1994), cited with approval in *State ex rel. Shaughnessy v. Cleveland*, 149 Ohio St.3d 612, 2016-Ohio-8447, 76 N.E.3d 1171, ¶ 10; *State ex rel. Thomas v. Ohio State Univ*. 70 Ohio St.3d 1437, 638 N.E.2d 1041 (1994).

{¶23} Regarding the specificity required of public records requests, R.C. 149.43(B)(2) provides:

> If a requester makes an ambiguous or overly broad request or has difficulty in making a request for copies or inspection of public records under this section such that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested, the public office or the person responsible for the requested public record may deny the request but shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties.

Thus, "it is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue." *State ex rel. Zidonis v. Columbus State Community College*, 133 Ohio St.3d 122, 2012-Ohio-4228, 976 N.E.2d 861, ¶ 21. A public office may deny a request that fails to meet this standard. Judicial determination of whether the office has properly denied the request is based on the facts and circumstances in each case, *Zidonis* at ¶ 26.

{¶24} The courts recognize several ways that a request may be overly broad. First, a request for an entire category of records is overly broad and unenforceable:[3]

> [A] "records request is not specific merely because it names a broad category of records listed within an agency's retention schedule." * * *. For example, the retention schedule for the administrative records of Ohio courts includes broad categories like "correspondence and general office records," "employee history and discipline records," "fiscal records," and "payroll records." Sup.R. 26.01(F), (J), (K), and (M). Requests for each of these record categories without any temporal or content-based limitation would likely be overbroad even though the categories are so named in the schedule.

*Zidonis* at ¶ 21, 26. Even with some temporal limitation, a request to produce an entire category of records may remain overly broad. *Zidonis* at ¶ 21 (all complaint files and litigation files from within six years of when files were last active). Fundamentally,

> In identifying records for purposes of presenting a viable request, the Public Records Act "does not contemplate that any individual has the right to a complete duplication of voluminous files kept by government agencies."

(Citations omitted.) *Id. Accord State ex rel. Dehler v. Spatny*, 127 Ohio St.3d 312, 2010-Ohio-5711, 939 N.E.2d 831, ¶ 1-3 (prison quartermaster's orders/receipts for clothing for seven years); *Strothers v. Keenon*, *supra*, at ¶ 29 (all personnel records, without time frame, subject matter, or specific employee names); *Salemi v. Cleveland Metroparks*, 8th Dist. Cuyahoga No. 100761, 2014-Ohio-3914, ¶ 26 (checks, agreements, meeting minutes, emails, and letters that relate to marketing of golf course); *State ex rel. McElroy v. Polito*, 8th Dist. Cuyahoga No. 77042, 1999 Ohio App. LEXIS 5683 (November 30, 1999) (marriage license applications from a specified year, where no collection or index of such records existed).

{¶25} Gupta requests entire categories of records, such as "complaints," "reports of safety violations," "communications," and "emails" in the following requests:

---

[3] Contrast with civil discovery, where a litigant may request production of documents "by category." Civ.R. 34(B).

July 19, 2017 requests Nos. 1-3, 5-14: September 1, 2017 requests Nos. 1, 6, 11, 12. (Complaint at 2-4, 14-16.) Most of these requests are unbounded by any date range, and the few that are ask for multiple years of records. Even the shortest, for two years of all "emails and any other correspondence" between named individuals (September 1, 2017 request No. 12) is overly broad in scope. *See Glasgow, supra*, at ¶ 4-5, 16-19 (request for all e-mails to and from a public official for a five-month period was overly broad and improper). *Accord Zidonis* at ¶ 28-32 (all email between employee and supervisor over several years). *But see State ex rel. Carr v. London Corr. Inst.,* 144 Ohio St.3d 211, 2015-Ohio-2363, 41 N.E.3d 1203, ¶ 25-29 (request for communication between one person and a specific department for two months found not overly broad).

{¶26} A public records request is also unenforceable if it is too voluminous, vague or indefinite to be properly acted on by the records holder. *State ex rel. Dehler v. Spatny*, 11th Dist. No. 2009-T-0075, 2010-Ohio-3052, ¶ 4, 18, *aff'd*, 127 Ohio St.3d 312, 2010-Ohio-5711. Such a request may be both overly broad and ambiguous at the same time:

> A general request, which asks for everything, is not only vague and meaningless, but essentially asks for nothing. At the very least, such a request is unenforceable because of its overbreadth. At the very best, such a request is not sufficiently understandable so that its merit can be properly considered.

*State ex rel. Zauderer v. Joseph*, 62 Ohio App.3d 752, 756, 577 N.E.2d 444 (10th Dist. 1989) (all traffic accident reports). A request may be denied as ambiguous if the public office cannot reasonably identify what public records are being requested. R.C. 149.43(B)(2). Indeed, without sufficient specificity for a court to order clear terms of compliance with a request, the court cannot later enforce alleged non-compliance.

{¶27} Gupta makes ambiguous requests using vague or indefinite language in the following: July 19, 2017 requests Nos. 1-3, 5-14: September 1, 2017 requests Nos. 1-4, 11-12. (Complaint at 2-4, 14-16.) Instead of identifying with reasonable clarity

the records sought within broad categories or topics, these requests use undefined terms such as "entities," "processes," "companies," "reports," "any predecessors," "other lists," "any other facility associated with [city division]," records "regarding compliance," "measures * * * put in place," "damage reports," and "any other correspondence" that provide no clear description of, or clear boundary to, the records sought. These requests also employ unclear terms of expansion by requesting items "relating to," or "regarding," or "reflecting" a category or topic.

{¶28} Finally, a public office is not obliged to "seek out and retrieve those records which would contain the information of interest to the requester." *State ex rel. Fant v. Tober*, 8th Dist. Cuyahoga No. 63737, 1993 Ohio App. LEXIS 2591, *3 (April 28, 1993). *See Shaughnessy v. Cleveland,* 149 Ohio St.3d 612, 2016-Ohio-8447, 76 N.E.3d 1171, ¶ 10-11, 19-22 (request to retrieve records containing selected information, and cull out what requester did not want); *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 190 Ohio App.3d 218, 2010-Ohio-3416, ¶ 7-11 (8th Dist.) (request for records containing information about personal injury claims), *rev'd in part on other grounds*, 131 Ohio St.3d 149, 2012-Ohio-115, 962 N.E.2d 297; *State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 14-15 (request for "[a]ny and all email communications * * * which reference * * * the 'evidence-based model' or education funding in general") (first ellipsis sic); *State ex rel. Thomas v. Ohio State Univ.*, 71 Ohio St.3d 245, 246, 643 N.E.2d 126 (1994) (noting denial of writ of mandamus where request sought information "regarding or related to" any pro-animal-rights action group or individual). A request for all communication "regarding" a topic necessitates an office-wide search of the entire email system and all other written correspondence throughout the office. Such a request is improperly ambiguous, overly broad, and requires a search rather than reasonably identifying the records sought. *Gannett GP Media, Inc. v. Ohio Dept. of Pub. Safety*, Ct. of Cl. No. 2017-00051-PQ, 2017-Ohio-4247, ¶ 12. A request is also ambiguous or overly broad when it identifies

correspondents or other persons only as belonging to titles, groups or categories, for which research by the office is required to establish such membership. *State ex rel. Oriana House, Inc. v. Montgomery*, 10th Dist. Franklin Nos. 04AP-492, 04AP-504, 2005-Ohio-3377, ¶ 9, overturned on other grounds, 107 Ohio St.3d 1694, 2005-Ohio-6763, 840 N.E.2d 201; *Gannett GP Media* at ¶ 11.

{¶29} Gupta makes requests requiring research for information of interest to her, e.g., "complaints of any nature," and to identify unnamed "entities," "companies," "facilities," "predecessors," "local, state, or federal agencies," in the following requests: July 19, 2017 request Nos. 1-3, 5, 7-14: September 1, 2017 request Nos. 1-4, 11. (Complaint at 2-5, 14-16.) Instead of identifying with reasonable clarity the records sought within broad categories or topics, these requests require the City to conduct a search through all its correspondence and other voluminous records for the information of interest to Gupta.

### Disposition of the Requester's Claims

{¶30} [*Words and phrases within quotes below are those found, in context, to be ambiguous and/or overly broad.*]

<u>July 19, 2017 letter:</u>

1. Contracts that the City of Cleveland has with entities engaged in handling and dumping waste at the Ridge Road Transfer Station or any other City of Cleveland waste-management facility or waste-disposal transfer station. Such entities include but are not limited to Republic Waste Management, City of Brooklyn, and City of Lakewood.

{¶31} Gupta accepted the City's response negotiated in mediation, and this claim is therefore moot. (Reply at 11; Kretch Aff. at ¶ 5.) This request is also ambiguous and overly broad in not naming a time period. Contracts that the City "has" with entities could mean current contracts, or could mean contracts in the City's possession going back to the 1961 inception of Ridge Road Transfer Station. (Sur-reply at 5.) Parties to the contracts sought are not limited to the three named entities, but to any "entities

engaged in" handling and dumping waste. The request is ambiguous and overly broad in referring without identification to "any other" City waste management or disposal facility.

> 2. Documents related to the City of Cleveland's bidding process with companies, including but not limited to Republic Waste Management, engaged in handling and dumping waste at the Ridge Road Transfer Station or any other City of Cleveland waste-management facility or waste-disposal transfer station.

{¶32} Gupta accepted the City's response negotiated in mediation, and this claim is therefore moot. (Reply at 11; Response at 4.) This request is also ambiguous and overly broad in requesting documents "related to" a "process," and not naming a time period. The reference to companies "engaged" in handling and dumping waste is ambiguous and could mean only companies currently engaging in the activity, or mean all such companies going back to the 1961 inception of Ridge Road Transfer Station. The request is ambiguous and overly broad in referring without identification to companies and facilities "including but not limited to" the named company and facility "or any other" City waste management or disposal facility.

> 3. Documents regarding the identity of entities, including but not limited to Fabrizi, disposing of materials at the Ridge Road Transfer Station or any other City of Cleveland waste-management facility or waste-disposal transfer station. Such documents include but are not limited to receipts, logs, reports, and handwritten notes.

{¶33} This claim is moot to the extent the City presented Gupta with roughly 20,000 pages of documents reflecting daily logs from January 1, 2016 to December 31, 2017 for inspection. (Reply at 12; Response at 3-4; Kretch Aff. at ¶ 5.) The remainder of the request is ambiguous and overly broad in requesting documents "regarding" identities of entities and not specifying a time period. The reference to companies "disposing of materials" is ambiguous and could mean only companies currently engaging in the activity, or all such companies going back to the 1961

inception of Ridge Road Transfer Station. The request is ambiguous and overly broad in referring without identification to "any other" City waste management or disposal facility or transfer station.

> 4. Personnel/employee files, including records that would typically be kept in a personnel file such as records of any training, discipline, or personal or professional reference information, of Gary Samuels, Crystal Jones, Warren Thornton, Mary Young, Bruce Henderson, John Cobbs, Lucius Williams, Pamela Daniel, Patrick Polowyk, Clintia Shivers, and Vanessa Johnson.

**{¶34}** Gupta accepted the City response negotiated in mediation, and this claim is therefore moot. (Reply at 12; Response at 4.)

> 5. Organizational charts of the City of Cleveland Division of Waste Collection and Disposal (and any predecessors), operative from 2000 to the present.

**{¶35}** The City attests that it has provided "each and every organization chart of the City of Cleveland Division of Waste that was within the City's possession at the time of her July 19, 2017 request." (Kretch Aff. at ¶ 8.) Gupta provides no contrary evidence other than, "The record-retention policy does not appear to call for their destruction, so I believe they exist." (Reply at 12.) *See* "Non-Existent Records" section, above. I find that Gupta has failed to show by clear and convincing evidence that she has been denied access to any existing records described in this request. The claim is therefore moot. This claim is also ambiguous in referring without further identification to "any predecessors."

> 6. Records such as registers or other lists reflecting City of Cleveland employees who worked in or for the Division of Waste Collection and Disposal (including construction-equipment operators, garbage-truck drivers, asphalt, etc.) in the last 10 years.

**{¶36}** Gupta accepted the City response negotiated in mediation, and this claim is therefore moot. (Reply at 12; Response at 4.) This request is ambiguous and overly broad in asking for records "such as" registers or "other lists" "reflecting" City employees

who worked "in or for" a City division. The request is overly broad in naming a ten-year time period.

> 7. All records reflecting or regarding reports of safety violations within the last 10 years at the Ridge Road Transfer Station or any other facility associated with the City of Cleveland's Division of Waste Collection and Disposal. Such records include but are not limited to communications, complaints, and reports.

{¶37} This request is ambiguous and overly broad in asking for records "reflecting or regarding" "reports of safety violations" at a named facility or "any other facility" "associated with" the City's Division of Waste Collection and Disposal, including "but not limited to" "communications," for a period of ten years. The City nevertheless provided some responsive records. (Response at 9; Disk 1, Bates Nos. PRR-CLE-1557-2976 to 2994.)

> 8. All documents, including but not limited to communications, photos, and reports, regarding compliance with local, state, and federal environmental, health, and safety laws and regulations at the Ridge Road Transfer Station or any other City of Cleveland waste-management facility or waste-disposal transfer station in the last 10 years.

{¶38} This request is ambiguous and overly broad in asking for all records "including but not limited to" "communications, photos, and reports," "regarding" "compliance with" undefined "local, state, and federal environmental, health, and safety laws and regulations" at a named facility "or any other" City waste management facility or waste disposal transfer station, for a period of ten years. The City nevertheless provided some responsive records. (Response at 5; Disk 1, Bates Nos. PRR-CLE-1557-2995 to 3180.)

> 9. All records, including but not limited to logs, receipts, communications, reports, and notes, regarding materials that were disposed of at the Ridge Road Transfer Station or any other City of Cleveland waste- management facility or waste-disposal transfer station within the last ten years. The information requested includes, for example, the identity of the materials, their weight, their source, and their toxicity level.

{¶39} This request is ambiguous and overly broad in asking for records "including but not limited to" logs, receipts, "communications," "reports," and "notes," "regarding" "materials" that were disposed of at a named facility "or any other" City waste management facility or waste disposal transfer station, for a period of ten years. The City nevertheless provided some responsive records. (Response at 5; Disk 1, Bates Nos. PRR-CLE-1557-2995 to 3180.)

> 10.   All records, including but not limited to logs, sign-in sheets, timecards, and reports reflecting the clock-in/clock-out time of all Cleveland employees at the Ridge Road Transfer station and any other City of Cleveland waste-management facility or waste-disposal transfer station in the last seven years.

{¶40} Gupta accepted the City's response negotiated in mediation, and this claim is therefore moot. (Reply at 14; Response at 5-6.) This request is ambiguous and overly broad in asking for records "including but not limited to" logs, sign-in sheets, timecards, and "reports" "reflecting" clock-in/clock-out time of all Cleveland employees at a named facility "or any other City waste management facility or waste disposal transfer station," for a period of seven years.

> 11.   All records, including but not limited to logs, reports, photos, and communications, regarding any testing or inspection by any local, state, or federal agency at the Ridge Road Transfer station or any other City of Cleveland waste-management facility or waste-disposal transfer station in the last ten years.

{¶41} This request is ambiguous and overly broad in asking for all records "including but not limited to" logs, "reports," photos, and "communications," "regarding" "any" "testing or inspection" by "any local, state, or federal agency" at a named facility "or any other City waste management facility or waste disposal transfer station," for a period of ten years. The City nevertheless provided some responsive records. (Response at 6; Disk 1, Bates Nos. PRR-CLE-1557-2995 to 3180 and 3398 to 3560.)

> 12.   All records, including but not limited to signs, fliers, logs, reports, manuals, codes, and communications, regarding and reflecting

procedures, processes, and training on which materials are to be disposed of and how they are to be disposed of at the Ridge Road Transfer Station or any other City of Cleveland waste-management facility or waste-disposal transfer station.

{¶42} This request is ambiguous and overly broad in asking for all records, "including but not limited to" signs, fliers, logs, "reports," manuals, codes, and "communications," "regarding and reflecting" "procedures, processes, and training" on disposal of "materials" at a named facility "or any other" City waste management facility or waste disposal transfer station. The request is overly broad in not specifying a time period. The City alleges that it has provided some responsive records (Response at 6.), apparently referencing records regarding safety policies and standard operating procedures that Gupta has not categorized as responsive to this request.

13.   All records regarding measures the Division of Waste Collection and Disposal has put in place to protect the health and safety of city employees at the Ridge Road Transfer Station or any other City of Cleveland waste-management facility or waste-disposal transfer station.

{¶43} This request is ambiguous and overly broad in asking for all records "regarding" "measures" the City division "has put in place" "to protect the health and safety of city employees" at a named facility "or any other" City waste management facility or waste disposal transfer station. The request is overly broad in not specifying a time period. The City nevertheless provided some responsive records. (Response at 6-7; Disk 1, Bates Nos. PRR-CLE-1557-3561 to 3637.)

14.   All records, including but not limited to reports, photos, and communications, relating to the maintenance of structures and environment at the Ridge Road Transfer Station or any other City of Cleveland waste-management facility or waste-disposal transfer station. This request includes records relating to the maintenance of such things as lights, fans, ceilings, flooring, and water drainage.

{¶44} This request is ambiguous and overly broad in asking for all records, "including but not limited to" "reports," photos, and "communications," "relating to" the maintenance of "structures and environment" at a named facility "or any other" City

waste management facility or waste disposal transfer station. The request is overly broad in not specifying a time period. The City nevertheless provided some responsive records. (Response at 7; Disk 1, Bates Nos. PRR-CLE-1557-2995 to 3180.)

September 1, 2017 letter

> 1. All emails in 2016-2017 between Lucius Williams and any of the following regarding complaints of any nature at the Ridge Road Transfer Station: Tony Ludwig and Paul Alvatar.

**{¶45}** This request is ambiguous and overly broad in asking for all email between one person and two correspondents "regarding" "complaints of any nature" at a named facility, for a period of two years.

> 2. Records reflecting complaints about employee Gary Samuels from 2001 to the present.

**{¶46}** This request is ambiguous and overly broad in asking for all records "reflecting" "complaints" about an employee for a period of sixteen years. Because "complaints" about employees are not maintained in a single file, the request would require a search through all office communications and all potential City investigative departments. (West Aff. at ¶ 6.) The request is moot to the extent that the City provided Samuels' personnel file and any complaints contained therein. (*Id.* at ¶ 7; July 19, 2017 request No. 4.)

> 3. Records reflecting complaints about employee John Cobbs from 2010 to the present.

**{¶47}** This request is ambiguous and overly broad in asking for all records "reflecting" "complaints" about an employee for a period of seven years. Because "complaints" about employees are not maintained in a single file, the request would require a search through all office communications and all potential City investigative departments. (West Aff. at ¶ 6.)  The request is moot to the extent that the City provided Cobbs' personnel file and any complaints contained therein. (*Id.* at ¶ 7; July 19, 2017

request No. 4.) The City provided a record that Gupta accepts as responsive despite naming only a "Mr. Cox." (Disc 2, Bates Nos. PRR-CLE-1873-3 to 4.)

4. Records reflecting complaints against Warren Thornton from 2001 to the present.

**{¶48}** This request is ambiguous and overly broad in asking for all records "reflecting" "complaints" against an employee for a period of sixteen years. Because "complaints" about employees are not maintained in a single file, the request would require a search through all office communications and all potential City investigative departments. (West Aff. at ¶ 6.) The City nevertheless provided some responsive records. (Response at 7-8; Disc 2, Bates Nos. PRR-CLE-1873-3 to 16.) The request is moot to the extent that the City provided Thornton's personnel file and any complaints contained therein. (*Id.* at ¶ 7; July 19, 2017 request No. 4.)

5. City of Cleveland record-retention policies.

**{¶49}** Gupta accepted the City's response, and this claim is therefore moot. (Reply at 18; Response at 8.)

6. Any recordings of voicemail messages left on Tony Ludwig's voicemail from Patrick Polowyk, Michael Greene, Lucius Williams, Gary Samuels, Crystal Jones, Marion Baker, and Bruce Henderson from 2016 to the present.

**{¶50}** This request is overly broad in asking for all messages on an employee's voicemail for a period of 21 months from seven individuals. The request improperly demands a search and culling of responsive records. *See Shaughnessy, supra*. The claim is moot as the City attests that no records responsive to this request were in existence on the date of the request. (Ludwig Aff. at ¶ 5.)

7. Pay stubs and W-2s 2001 of Gary Samuels, Crystal Jones, Warren Thornton, Mary Young, Bruce Henderson, John Cobbs, Lucius Williams, Pamela Daniel, Patrick Polowyk, Clintia Shivers, Vanessa Johnson, and Marion Baker.

{¶51} The City has provided all responsive W-2s from 2001. (Kretch Aff. at ¶ 9.) The City provided evidence that no pay stubs from 2001 were in existence on the date of the request. (Moss-Walker Aff. at ¶ 5.) This claim is therefore moot.

> 8.  Timecards from 2007 to 2017 of Gary Samuels, Crystal Jones, Warren Thornton, Mary Young, Bruce Henderson, John Cobbs, Lucius Williams, Marion Baker, Pamela Daniel, Patrick Polowyk, Clintia Shivers, and Vanessa Johnson.

{¶52} This request is overly broad in asking for all "timecards" for a period of ten years for twelve individuals. The City nevertheless provided some responsive records. (Response at 8; Disc 2, Bates Nos. PRR-CLE-1873-286 to 536.)

> 9. Personnel/employee file of Marion Baker, including any contracts or employment agreements, and including records that would typically be kept in a personnel file such as records of any training, discipline, or personal or professional reference information.

{¶53} Gupta accepted the City's response negotiated in mediation, and this claim is therefore moot. (Reply at 19; Response at 9.)

> 10.  Signed employee acknowledgments of receiving the safety handbook and certificates for completing all training for the following individuals: Gary Samuels, Crystal Jones, Marion Baker, Warren Thornton, Mary Young, Bruce Henderson, John Cobbs, Lucius Williams, Pamela Daniel, Patrick Polowyk, Clintia Shivers, and Vanessa Johnson from 2015 to the present.

{¶54} Gupta asserts denial of *signed* documents (Reply at 19), but provides no evidence that they existed at the time of the request. The City provided Gupta with a printout of a database reflecting the requested information, and attests that it has provided her all known responsive documents. (*Id.*; Response at 9; Kretch Aff. at ¶ 10; Disc 2, Bates Nos. PRR-CLE-1873-581 to 592.) I find that Gupta has failed to show by clear and convincing evidence that she has been denied any existing records responsive to this request.

11. Accident, incident, sick-call and damage reports for the Ridge Road Transfer Station and any other waste-transfer facility from 2010 to the present.

{¶55} This request is ambiguous and overly broad in asking for all accident, "incident," sick call and "damage" reports for a named facility and "any other" waste-transfer facility for a period of seven years. The City nevertheless provided some responsive records. (Response at 9; Disc 2, Bates Nos. PRR-CLE-1873-593 to 734.)

12. Emails and any other correspondence between Marion Baker and Tony Ludwig from January 1, 2016 to the present.

{¶56} This request is overly broad in asking for all "emails and other correspondence" between two persons for a period of one year and eight months. See *Zidonis, supra*.

**Embedded Requests**

{¶57} A proper request embedded within an otherwise ambiguous or overly broad request may be enforceable. In *Glasgow, supra*, at ¶ 1, 17-24, the request for all of a state representative's email for five months was found overly broad, but embedded language – "including, but not limited to [a particular house bill]" – was sufficiently narrow to be a proper request. *See also Strothers v. Keenon*, 8th Dist. Cuyahoga No. 103313, 2016-Ohio-405, 59 N.E.3d 556, ¶ 24-30. On review, July 19, 2017 requests Nos. 1-3, 6-12, 14 and September 1, 2017 request No. 11 contain embedded requests, primarily in the form of named individuals or entities following the phrase "including but not limited to." However, in each case I find that the narrowing within the embedded request removed only one of multiple factors that rendered the request ambiguous and overly broad, and that none are separately enforceable as a properly specific request. If Gupta believes the court has overlooked an enforceable embedded request for a particular record she has not received, she may of course make a new public records request to the City.

**Failure to Provide Records Promptly**

{¶58} An office must promptly prepare requested public records for inspection. R.C. 149.43(B)(1). "Promptly" means "without delay and with reasonable speed" and its meaning "depends largely on the facts in each case." *State ex rel. Wadd v. Cleveland,* 81 Ohio St.3d 50, 53, 689 N.E.2d 25 (1998). Similarly, "reasonable period of time" is evaluated based on the facts and circumstances of each case, including whether a request is improper from the outset. *Shaughnessy, supra*, at ¶ 8-22. This contextual test rejects the notion that a public office must respond to all requests within any arbitrary number of days. *Id.* at ¶ 14-15. However, it does not excuse withholding of processed records as they become available. On August 22, 2017, the PRS advised that it was collecting responsive documents and promised that "[o]nce documents received have been reviewed, become approved and ready for release we will contact you." (Complaint at 11.) Gupta agreed "we would like to receive the records on a rolling basis" a week before filing her complaint. (*Id.* at 20.) The City offers no justification for not providing any responsive records until November 17, 2017 – four months after the July 21, 2017 letter and eleven weeks after the September 1, 2017 letter. For example, the City could have sent the link to its online records retention schedules immediately. Similarly, the personnel/employment files of specified employees (July 21, 2017 request No. 4 and September 1, 2017 request No. 9) are routine requests and should have been provided in far less time. I find that under the facts and circumstances of this case the City failed to provide at least these records within a reasonable period of time.

**Failure to Respond to Ambiguous and Overly Broad Requests Promptly and With Required Information**

{¶59} Similarly, the City violated its statutory obligation to respond promptly and properly to requests it believed were ambiguous or overly broad. When an improper request is denied, R.C. 149.43(B)(2) requires the public office to

> provide the requester with an opportunity to revise the request[4] by
> informing the requester of the manner in which records are maintained
> by the public office and accessed in the ordinary course of the public
> office's or person's duties.

The statute does not require the office to rewrite the request for the requester, but the office should convey relevant information to support revision of the request. Options include, but are not limited to: offering to discuss revision with the requester, *Zidonis, supra,* at ¶ 4-5, 40; *State ex rel. Morgan v. Strickland,* 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 14-20, providing the requester with a copy of the office's records retention schedule, *Zidonis* at ¶ 36, or other explanation of how records are maintained and accessed. *Id.* at ¶ 35. A requester's demonstrated ability to craft other, proper requests can show that the requester already possesses information necessary to revise and narrow his request. *Id.* A public office's voluntary effort to provide some responsive records, notwithstanding denial of the request, is considered favorably in evaluating its response. *Id.* at ¶ 39; *Morgan* at ¶ 6, 14.

**{¶60}** When it finally responded on November 17, 2017, counsel for the City accompanied its denials for ambiguity and overbreadth with an invitation for Gupta to revise the requests. (Response, Exhibit A.) Counsel also offered: "Of course, please do not hesitate to contact me directly with any questions, concerns or should you wish to discuss this matter further." *Id.* The parties engaged in mediation designed to narrow and clarify the requests in mediation, leading to the City's production of tens of thousands of pages of responsive records to otherwise ambiguous and overly broad requests. Gupta knew to request a copy of the City's records retention schedule, and the City provided the link to its publicly available online version. Gupta's law firm holds itself out as experienced in public records law, and is thus aware that reasonably specific requests are required. *See* https://www.chandralaw.com/practice-areas/media-

---

[4] The requirement that the office provide an opportunity to revise by informing the requester does not support Gupta's assertion of an affirmative "right" to revise requests after filing her complaint.

entertainment-law (Accessed June 28, 2018). The City's reasonable efforts, had they been made earlier, may have satisfied its statutory obligation to provide Gupta with the opportunity and information to revise her requests. However, I find that their delay until months after each request constitutes violation of R.C. 149.43(B)(2).

{¶61} This case reflects missed opportunities for pre-litigation resolution. Requester had the knowledge and expertise to make narrower requests, but did not. Respondent had the knowledge and experience to promptly deny overly broad requests, invite revision, and offer explanation of how the office's records are maintained and accessed, but did not. Timely provision of records as they were processed and timely explanation for withholding, complimented by specific requests for records and realistic expectations of the time needed to satisfy voluminous requests, might have obviated some of the claims herein.

{¶62} The Public Records Act requires parties to cooperate with the goal of identifying the specific records sought while minimizing the burden on the public office. The parties are encouraged to fully utilize the tools provided by R.C. 149.43(B)(2) through (7) in negotiating future requests. Early cooperation can result in timely, mutually satisfactory revision of overly broad requests, and is favored by the courts. *See State ex rel. Morgan v. Strickland,* 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 15-20.

### Conclusion

{¶63} Upon consideration of the pleadings and attachments, I recommend that the court find that Gupta's public records requests have been rendered moot and/or were properly denied by the City as ambiguous and overly broad. Accordingly, I recommend that the court issue an order DENYING Gupta's claim for production of records. I further recommend that the court find the City failed to provide responsive records within a reasonable period of time to those requests that properly identified specific records sought, and failed to timely provide the opportunity and information

statutorily required in response to ambiguous and overly broad requests. I recommend that court costs be shared equally by the parties.

{¶64} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

JEFFERY W. CLARK
Special Master

**Filed July 3, 2018**
**Sent to S.C. Reporter 8/29/18**